## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

*Bowler MJ*

)
)
BOSTON AND MAINE CORPORATION,    )
)
    Plaintiff,    )    **05 CA 11656**    *RMG*
)
    -v.-    )
)    Case No. _____
MASSACHUSETTS BAY TRANSPORTATION    )
AUTHORITY,    )    RECEIPT #_____
)    AMOUNT $ 250
    Defendants.    )    SUMMONS ISSUED
)    LOCAL RULE 4.1
                                           WAIVER FORM
                                           MCF ISSUED

## COMPLAINT FOR
## ENFORCEMENT OF BANKRUPTCY CONSUMMATION ORDER,
## INJUNCTIVE RELIEF AND CONTEMPT

BY DPTY. CLK._____
DATE

    The plaintiff—Boston and Maine Corporation—seeks to enforce the June 17, 1983

Consummation Order ("Consummation Order") entered by this Court in Boston and Maine's

bankruptcy proceedings. The defendant—the Massachusetts Bay Transportation Authority—

recently asserted, for the first time, environmental claims against Boston and Maine that antedate

the Consummation Order. The Consummation Order discharged such claims permanently,

however, and enjoined their assertion.

    Boston and Maine, which operates a railroad providing freight service in the northeastern

United States, emerged from bankruptcy as a reorganized entity in 1983. This Court presided

over the bankruptcy proceedings, which were held pursuant to the Bankruptcy Act of 1898

(subsequently repealed). This action seeks to enforce the Consummation Order.

On May 4, 2004, MBTA asserted a claim against Boston and Maine for reimbursement of costs that MBTA allegedly has incurred, and may incur in the future, to investigate and remediate environmental contamination at the Boston Engine Terminal (the "Terminal"). The Terminal is a rail yard, in operation since 1875, at which locomotives and other rail rolling stock are fueled, maintained, and repaired. According to MBTA, the contamination occurred while Boston and Maine either owned or operated the Terminal during the period 1926 through 1986. MBTA's claim and demand for payment is in excess of $15 million.

This Court's Consummation Order rendered effective Boston and Maine's Amended Plan of Reorganization, confirmed by this Court on May 10, 1983, and enjoined the assertion of claims against Boston and Maine arising on or before June 30, 1983. MBTA purchased the Terminal from Boston and Maine's bankruptcy estate in 1976 and knew before the Consummation Order was entered that the Terminal had been affected by the release of petroleum products. Nevertheless, MBTA failed to file a proof of claim in Boston and Maine's bankruptcy case. Accordingly, MBTA is enjoined from asserting a claim against Boston and Maine for contamination that occurred prior to June 30, 1983 and any such claims are forever barred.

MBTA's assertion of a claim against Boston and Maine violates several provisions of the Consummation Order. This action seeks an order (a) enforcing the Consummation Order against MBTA; (b) enjoining MBTA from asserting a claim against Boston and Maine for costs incurred, and that might be incurred, to investigate and remediate contamination existing at the Terminal prior to June 30, 1983; and (c) finding that MBTA's assertion of such a claim is in contempt of the Consummation Order. In addition, Boston and Maine seeks a declaration that

- - 2 - -

MBTA's substantial delay in asserting its claim renders such claim untimely pursuant to the doctrine of laches.

For its Complaint, Plaintiff states as follows:

## Jurisdiction and Venue

1.     This Court has subject matter jurisdiction over the claims of Boston and Maine ("B&M") pursuant to 28 U.S.C. §§ 1331 and 1334. This Court also retains jurisdiction pursuant to § 8.02 of the Consummation Order. A copy of the Consummation Order is annexed hereto as Exhibit A.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and pursuant to 28 U.S.C. § 1409(a) because B&M's bankruptcy case was filed in this district and this is a proceeding arising under Title 11 of the United States Code or arising in or related to a case under Title 11.

## Parties and Statement of the Case

3.     The plaintiff, B&M, is a Delaware corporation with its principal place of business at Iron Horse Park, North Billerica, Massachusetts 01862. B&M is a common carrier by rail providing freight service in the northeastern United States.

4.     The defendant, Massachusetts Bay Transportation Authority ("MBTA"), is a body politic and corporate, and is an independent political subdivision of the Commonwealth of Massachusetts. MBTA provides mass transportation service throughout eastern Massachusetts by means of bus, subway, light rail, and otherwise.

- - 3 - -

5.      This action arises under the Bankruptcy Act of 1898 (formerly codified at Title 11 of the United States Code and now repealed) and orders issued pursuant thereto, including this Court's Consummation Order.

6.      B&M seeks injunctive relief—consistent with the provisions of the Consummation Order—restraining and enjoining MBTA from asserting claims against B&M for reimbursement, and future payment, of MBTA's alleged costs associated with the investigation and remediation of environmental contamination at the Terminal, insofar as such claims arose on or before June 30, 1983—the final bar date established by the Consummation Order.

### Facts

7.      MBTA has asserted a claim against B&M under the Massachusetts Oil and Hazardous Materials Release Prevention Response Act, Mass. Gen. L. ch. 21E ("Chapter 21E"), with respect to alleged environmental contamination at the Terminal.

8.      MBTA's claim against B&M was made initially by a demand letter dated May 4, 2004, pursuant to Section 4A of Chapter 21E (the "Demand Letter"). A copy of the Demand Letter is annexed hereto as Exhibit B.

9.      MBTA's claim purportedly arises from contamination at the Terminal that resulted from historic railroad and maintenance activities conducted at the Terminal.

10.     MBTA alleges that the contamination, consisting of releases of oil or hazardous materials, primarily occurred during the period 1926 through 1986, when B&M owned or operated the Terminal. MBTA asserts that the primary contaminant of concern is weathered diesel fuel oil. *See* Demand Letter, Exhibit 2, page 2, para. 4.

11.     The Demand Letter seeks payment in excess of $15 million from B&M.

- - 4 - -

12.     B&M operated under Bankruptcy Court protection from 1970 to 1983 under the

Bankruptcy Act of 1898, as amended (the "Act"). This Court presided over the bankruptcy

proceedings, which were styled *In the Matter of Boston and Maine Corporation, Debtor*, Bankr.

No. 70-250-M (1970).

13.     In December 1976, with the approval of this Court, MBTA purchased the

Terminal from the bankruptcy estate of B&M.

14.     After the sale, B&M continued to operate the Terminal from 1976 through

December 31, 1986.

15.     Chapter 21E became law on March 24, 1983, prior to the date of the

Consummation Order. Similar legal and equitable remedies to redress environmental

contamination at the Terminal were available to MBTA before the enactment of Chapter 21E.

16.     MBTA had knowledge of petroleum releases and petroleum contamination at the

Terminal prior to June 1983, the date of the Consummation Order, and MBTA's claim for clean-

up costs for such contamination existed in or before June 1983.

17.     MBTA did not file in the B&M bankruptcy proceeding any proof of claim

relating to alleged contamination clean-up costs at the Terminal.

18.     On June 30, 1983, B&M emerged from bankruptcy protection as a reorganized

entity under the terms of the Consummation Order.

19.     Section 5.03 of the Consummation Order provides that "the Debtor and the

Debtor's Trustees shall, as of the Consummation Date, be discharged and released forever from:

(a) all obligations, debts, liabilities and claims against the Debtor's Trustees
or the Debtor, whether or not filed or presented, whether or not approved,
acknowledged or allowed in these proceedings and whether or not provable in
bankruptcy, including without limitation all claims assumed or guaranteed

- - 5 - -

by the Debtor's Trustees or the Debtor or enforceable against the
property of the Debtor;

(b) all obligations, debts, liabilities, claims, costs and expenses arising
out of or in connection with the Debtor's Trustees' administration of the property,
business and affairs of the Debtor, whether or not approved, acknowledged or allowed in
these proceedings, accruing prior to the Consummation Date.

20.     Section 2.01 of the Consummation Order also provides that the Consummation

Date was June 30, 1983 and Section 8.01 provides that "all persons, firms, governmental entities

and corporations" are enjoined from bringing claims following the Consummation Date.

Specifically, Section 8.01 states as follows:

> All persons, firms, governmental entities and corporations, wherever situated,
> located or domiciled, are hereby permanently restrained and enjoined from instituting,
> prosecuting or pursuing, or attempting to institute, prosecute or pursue, any suits or
> proceedings, at law or in equity or otherwise, against the Debtor's Trustees or the
> Reorganized Company or its or their successors or assigns . . . directly or indirectly, on
> account of or based upon any right, claim or interest of any kind or nature whatsoever
> which any such person, firm, governmental entity or corporation may have in, to or
> against the Debtor, the Debtor's Trustees or any of their assets or properties, and . . . from
> interfering with or taking steps to interfere with the Reorganized Company, its officers
> and agents, or the operation of the properties or the conduct of the business of the
> Reorganized Company by reason of or on account of any obligation or obligations
> incurred by the Debtor or the Debtor's Trustees in these proceedings, except the
> obligations imposed . . . by the Amended Plan and this Order. . . . All persons, firms,
> governmental entities and corporations, wherever situated, located or domiciled, are
> hereby restrained and enjoined from instituting, prosecuting or pursuing or attempting to
> institute, prosecute or pursue any action, suit or proceedings, at law, in equity or
> otherwise, against the Debtor's Trustees or the Reorganized Company or any of its or
> their assets or property, directly or indirectly, except such actions, suits or proceedings as
> may be for the purpose of carrying out this Order or consummating the Amended Plan.

21.     Section 8.02(g) of the Consummation Order provides that this Court has the

authority to "take such further action and to enter such further orders as may be necessary to . . .

prevent interferences" with the Consummation Order.

- - 6 - -

22.     The claim now asserted by MBTA in the Demand Letter was or should have been fairly contemplated by MBTA, and was reasonably foreseeable by MBTA, prior to the entry and effective date of the Consummation Order and prior to the final bar date established by section 2.01 thereof.

23.     Prior to the entry of the Consummation Order, B&M and MBTA had a relationship in connection with the Terminal that was sufficient to give rise to a claim by MBTA against B&M for the alleged contamination that is the subject of the Demand Letter.

## COUNT I

### Enforcement of June 17, 1983 Consummation Order

24.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 23 as if fully set forth here.

25.     Section 77 of the Bankruptcy Act of 1898 (11 U.S.C. § 205(b) (1976) (repealed 1978)) governed railroad bankruptcies. Section 77(b) broadly defined "claims" to include "debts, whether liquidated or unliquidated . . . or other interests of whatever character."

26.     The Consummation Order expressly provides that claims arising prior to the Consummation Date are discharged as of the Consummation Date.

27.     MBTA had knowledge of the supposed contamination at the Terminal prior to June 30, 1983.

28.     MBTA could have filed a claim against B&M for contamination at the Terminal, under Chapter 21E or other law, before the Consummation Date, yet MBTA failed to do so.

29.     MBTA's claim for past and future investigation and remediation costs pursuant to Chapter 21E contravenes the discharge provisions of the Consummation Order, thereby

- - 7 - -

depriving B&M of its rights under the Bankruptcy Act of 1898 and the Consummation Order, and causing damage and prejudice to B&M.

## COUNT II

### Injunctive Relief

30. Plaintiff repeats and realleges the allegations of paragraphs 1 through 29 as if fully set forth here.

31. Section 8.01 of the Consummation Order permanently enjoins "all persons, firms, governmental entities and corporations" from "instituting, prosecuting or pursuing, or attempting to institute, prosecute or pursue, any suits or proceedings, at law or in equity or otherwise" after the Consummation Date that are based on pre-Consummation Date claims against the Debtor.

32. This Court retains exclusive jurisdiction, pursuant to Section 8.02(f) of the Consummation Order, to "consider and take appropriate action with respect to the injunctive provisions of [the] Order," including enforcement of such injunctive provisions.

33. MBTA's claim against B&M for past and future investigation and remediation costs pursuant to Chapter 21E contravenes the injunctive provisions of the Consummation Order, thereby depriving B&M of its rights under the Bankruptcy Act of 1898 and the Consummation Order, and causing damage and prejudice to B&M.

## COUNT III

### Contempt of Consummation Order

34. Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 as if fully set forth here.

- - 8 - -

35.    By seeking pre-Consummation Date remediation and investigation costs more
than twenty years after the Consummation Date, despite the fact that MBTA had the requisite
knowledge, notice, and opportunity to make such a claim in the B&M bankruptcy proceeding,
MBTA evinces contempt for the Consummation Order and this Court's authority in issuing and
enforcing that Order.

36.    MBTA's actions also deprive B&M of its rights under the Bankruptcy Act of
1898 and the Consummation Order, thereby causing damage and prejudice to B&M.

## COUNT IV

### Laches

37.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 36 as if
fully set forth here.

38.    In May 2004—nearly thirty years after MBTA purchased the Terminal from
B&M in 1976, more than twenty years after the Consummation Date in 1983, and nearly twenty
years after B&M ceased operating the Terminal in 1986—MBTA transmitted the Demand Letter
to B&M seeking to recover MBTA's alleged investigation and remediation costs at the Terminal.

39.    MBTA thus substantially, unreasonably, and unjustifiably delayed in asserting its
claim for recovery of clean-up costs, despite MBTA's knowledge of the operations at the
Terminal and of petroleum releases there, and despite MBTA's opportunity to bring such a claim
since 1976.

40.    Prior to sending the Demand Letter to B&M, MBTA had given B&M no notice
that MBTA had incurred costs in respect of investigation or remediation of contamination at the
Terminal.

41. Prior to receiving the Demand Letter, B&M had no knowledge or notice that MBTA would assert a claim for past or future investigation or remediation costs in connection with the Terminal.

42. MBTA accordingly is guilty of laches.

43. B&M has suffered and will suffer damage and prejudice in the event that the current MBTA claim, and any similar future claims for investigation and clean-up costs, are not held to be barred.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff Boston and Maine Corporation prays that this Court—

(1) enter an order enforcing this Court's Bankruptcy Consummation Order of June 17, 1983 against MBTA;

(2) as to contamination occurring before June 30, 1983, enter an order enjoining the assertion by MBTA against B&M of claims for investigation or remediation costs at the Terminal;

(3) find and determine that MBTA's assertion of such claims is in contempt of the Consummation Order;

(4) find and determine that MBTA's assertion of such claims is prohibited pursuant to the doctrine of laches;

(5) award B&M its costs, including reasonable attorneys' fees; and

(6) grant such other relief as may be just and proper.

- - 10 - -

Respectfully Submitted,

_____
Robert B. Culliford (BBO #638468)
Katherine E. Potter (BBO #651726)
Iron Horse Park
North Billerica MA 01862
Tel. 978-663-1215

Eric L. Hirschhorn
Susan A. MacIntyre
Winston & Strawn LLP
1700 K Street, N.W.
Washington DC 20006
Tel. 202-282-5000

Terry John Malik
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Tel. 312-558-5600

*Counsel for Plaintiff*
*Boston and Maine Corporation*

August 10, 2005

- - 11 - -

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ORDER 725

In the Matter of

BOSTON AND MAINE CORPORATION,                    No. 70-250-M

Debtor

## CONSUMMATION ORDER

MURRAY, Senior District Judge

This case came on to be heard on June 3, 1983, on
the "Petition Of Trustees Of The Property Of Boston and Maine
Corporation, Debtor For Entry Of An Order Authorizing Consumma-
tion Of Amended Plan Of Reorganization", after due notice of
the time and place of the hearing having been given pursuant
to the order of the court, and, thereupon, upon consideration
of the answers and statements filed[1] in response to the petition,
the arguments of counsel for the Trustees of the Property of the
Debtor (herein "Debtor's Trustees") and for certain parties in
interest, and the entire record of the proceedings in this case,
it appearing that:

        1.   The Amended Plan of reorganization of the Debtor,
            Boston and Maine Corporation, was approved by the
            court on December 30, 1982, and was confirmed on
            May 10, 1983, pursuant to Orders No. 708 and

No. 724, respectively;

2. This court has exclusive jurisdiction of the
Debtor and its properties, wherever located;

3. This court has exclusive jurisdiction of all
claims, rights, demands, interests, liens, and
encumbrances of every kind and character of
creditors of, or claimants against, the Debtor
or its properties, whether or not properly or
timely filed and whether or not approved in
these proceedings;

It is, therefore, ORDERED that:

I. APPROVAL OF DOCUMENTS AND AGENTS

1.01. Approval of Documents. The form and provisions of
each of the following designated documents, appended to
this Order, are approved and are found and adjudged to be
in all respects in accordance with the intent and require-
ments of the Amended Plan and to be appropriate and proper
to carry it into effect:

(a) Certificate of Amendment of the Certificate of
Incorporation of the Debtor [Appendix A];

(b) Redeemable Preference Share Certificate, Series A
[Appendix B];

(c) Redeemable Preference Share Certificate, Series B
[Appendix C];

(d) Common Stock Certificate [Appendix D];

(e) Discharge of First Mortgage [Appendix E];

(f) Discharge of Income Bond Mortgage [Appendix F];

(g) Form of Debtor's Trustees' Deed [Appendix G];

(h) Indemnification Resolution of the Reorganized
Company [Appendix H].

1.02. Power to Make Certain Corrections. Before the execu-
tion, delivery of filing of any documents referred to in

Section 1.01 of this Order, the Debtor's Trustees are authorized to make or cause to be made any necessary typographical or clerical corrections, to fill in any blanks and to make any clarifying or conforming changes in such documents which do not change the substance thereof.

1.03.  Approval of Agents.  The following agents are hereby approved:

| Position | Name of Agent |
|---|---|
| Transfer Agent and Registrar for Redeemable Preference Shares and Common Stock | Reorganized Company |
| First Mortgage Bond Claims Agent | The First National Bank of Boston |
| Income Bond Claims Agent (and Transfer Agent, Registrar and Paying Agent for Series A Certificates of Contingent Interest, "Series A CCIs") | State Street Bank and Trust Company |
| Exchange Agent (and Transfer Agent, Registrar and Paying Agent for Series B, C, and D Certificates of Contingent Interest, "Series B, C, and D CCIs") | State Street Bank and Trust Company |
| Custodian of Segregated Account | State Street Bank and Trust Company |

1.04.  Approval of Acquisition Agreement.  The Acquisition Agreement dated July 8, 1981, between the Debtor's Trustees and Guilford Transportation Industries, Inc. ("Guilford"), as amended by the First, Second and Third Amendments thereto, is hereby approved, and the Debtor's Trustees are authorized and directed to carry out the provisions of the amended Acquisition Agreement.

- 3 -

## II.  CONSUMMATION DATE

2.01.  Consummation Date.  The date on which legal title to all property, assets, claims and rights of the Debtor and the Debtor's Trustees will be vested in or transferred to the reorganized Boston and Maine Corporation (the "Reorganized Company"), the date that the Debtor's Trustees shall be discharged and relieved of their duties and responsibilities in respect of administration of the property or the conduct of the business and affairs of the Debtor, and the date the Reorganized Company will commence issuing or reserving for issuance its securities as set forth in the Amended Plan, will be June 30, 1983.

2.02.  Closing and Opening Books.  The Debtor's Trustees shall cause the books and accounts of the Debtor to be closed as of 12:00 Midnight, E.D.T., on the Consummation Date.  The books and accounts of the Reorganized Company shall be opened as of 12:01 A.M., E.D.T., on the day following the Consummation Date.

## III.  CAPITALIZATION OF THE REORGANIZED COMPANY

3.01.  Amendment of Charter and Authorization to Issue Common Stock.  The Debtor's Trustees are hereby authorized and directed to execute on behalf of the Debtor and to cause to be filed on or before the Consummation Date with the Secretary of State of the State of Delaware and recorded with the Recorder of the County of New Castle, Delaware, a

- 4 -

Certificate of Amendment of the Certificate of Incorpora-

tion of the Debtor in the form approved by Section 1.01 of

this Order. As of the Consummation Date, all of the pres-

ently authorized Preferred and Common Stock of the Debtor,

including all shares of such stock which are then outstand-

ing, or are held by the Debtor's Trustees as Treasury stock

or otherwise, shall be cancelled. As of the Consummation

Date, the First Mortgage Bonds and the Income Bonds reg-

istered in the name of Guilford pursuant to Sections 3.4

and 3.5 of the Amended Plan shall be transferred to the

Debtor's Trustees, and the bonds shall thereupon be can-

celled by the Debtor's Trustees, and the Reorganized Company

shall issue to Guilford, and Guilford shall become the sole

owner of 2,425,000 shares of the new Common Stock, which

shares shall constitute all of the outstanding Common Stock

of the Reorganized Company.

3.02. Authorization of Issuance of Redeemable Preference

Shares. Upon the issuance of the new Common Stock to Guil-

ford on the Consummation Date, the directors of the Reor-

ganized Company shall provide for the issuance of Redeemable

Preference Shares in Series A and Series B to the United

States of America in accordance with the provisions of Sec-

tion 3.1(1) of the Amended Plan and the Preference Share

Agreement referred to therein.

IV.   SEGREGATED ACCOUNT

4.01.   Establishment of Account.   As of the Consummation Date, the Segregated Account shall be established as provided in Section 3.3(1) of the Amended Plan, as modified by the opinion of the court dated February 23, 1983, at the State Street Bank and Trust Company, the custodian of the Segregated Account.

V.   TRANSFER OF PROPERTIES AND DISCHARGE OF ENCUMBRANCES

5.01.   Vesting and Transfer of Properties.   Effective as of the Consummation Date, all the business and affairs and all of the assets and property, real and personal, remaining in the estate of the Debtor, of every name and nature, in any form, and all right, title and interest therein of the Debtor's Trustees, other than all cash and cash equivalents and other assets which are to be deposited in the Segregated Account pursuant to Section 3.3(1) of the Amended Plan, shall, the laws of any state or the decision or order of any state author- ity to the contrary notwithstanding, be transferred to, vest in and become the absolute property of the Reorganized Company and shall, except as to any obligations assumed pursuant to Section 6.04 of this Order and any mortgages or security in- terests securing such assumed obligations, be free and clear of all claims, rights, demands, interests, liens and encum- brances of every kind and character, whether or not properly or timely filed and whether or not approved, acknowledged or allowed in these proceedings, of the Debtor's or the Debtor's

- 6 -

Trustees' creditors, claimants or stockholders, including,
without limitation, all liens and emcumbrances which have
attached to the proceeds from the sale of any property of
the Debtor or the Debtor's Trustees.

5.02.  Disposition of Funds Held By Debtor's Trustees,
Indenture Trustees, Paying Agents, etc.  Effective as of
the Consummation Date, all of the funds held by the Debtor's
Trustees in their capacity as such (other than the cash and
cash equivalents and proceeds of claims to be deposited in
the Segregated Account as provided in the Amended Plan)
including (i) funds or securities heretofore deposited by
the Debtor's Trustees, the Debtor, or their predecessors
for the payment or partial payment of securities, interest,
interest coupons or dividends, (ii) funds representing pro-
ceeds from sales of properties of the Debtor, and (iii) funds
held pursuant to orders of this court by any and all indenture
trustees, paying agents, escrow agents or fiduciaries, shall
vest absolutely and without restriction in the Reorganized
Company and shall be paid thereafter by each such person
holding any such funds to or upon the order of the Reor-
ganized Company in accordance with the Amended Plan; and
any such payments to or upon the order of the Reorganized
Company shall, pro tanto, constitute satisfaction of any
liability to the Debtor or the Debtor's Trustees of any such
person for such funds; PROVIDED, that any funds being held

- 7 -

by The First National Bank of Boston with respect to miss-
ing coupons of First Mortgage Bonds presented for payment in
response to the Debtor's Trustees' Tender Offer of May 3,
1979 shall continue to be held and disposed of by the said
Bank in accordance with the terms of the said Tender Offer
until the fifth anniversary of the Consummation Date, and
any such funds then remaining shall then be paid to the
custodian of the Segregated Account.

5.03. Discharge and Release of Claims. Subject to (i) the
provisions of Section 6.04 of this Order relating to the
payment, assumption or satisfaction by the Reorganized Com-
pany of certain claims and executory contracts, and (ii) the
rights of the various classes of creditors of the Debtor to
receive payments out of the Segregated Account as provided
by the Amended Plan, the Debtor and the Debtor's Trustees
shall, as of the Consummation Date, be discharged and released
forever from:

> (a)  all obligations, debts, liabilities and claims
> against the Debtor's Trustees or the Debtor, whether
> or not filed or presented, whether or not approved,
> acknowledged or allowed in these proceedings and
> whether or not provable in bankruptcy, including
> without limitation all claims assumed or guaranteed
> by the Debtor's Trustees or the Debtor or enforce-
> able against the property of the Debtor;
>
> (b)  all obligations, debts, liabilities, claims,
> costs and expenses arising out of or in connection
> with the Debtor's Trustees' administration of the
> property, business and affairs of the Debtor, whether
> or not filed or presented and whether or not approved,
> acknowledged or allowed in these proceedings, accruing
> prior to the Consummation Date; and

> (c) all obligations, debts, liabilities and claims
> with respect to all bonds, coupons, debentures,
> notes, certificates, evidences of indebtedness,
> shares of stock, securities and leases (including
> interest accrued and dividends declared), without
> limitation as to their nature and whether made,
> assumed or guaranteed by the Debtor or the Debtor's
> Trustees or enforceable against them or the property
> of the estate.

5.04. Discharge and Release of Mortgages. Except for those

mortgages, security interests or other encumbrances described

in Section 6.04 of this Order to which certain properties to

be transferred by the Debtor's Trustees to the Reorganized

Company shall remain subject, all mortgages, indentures,

collateral trust indentures and other instruments entered

into by the Debtor, or its predecessor, that now constitute

or heretofore constituted a lien on any of the property of ·

the Debtor, other liens of record on such property, all mort-

gages, indentures, collateral trust indentures or instruments

supplementing or modifying the same and all covenants therein

contained shall, as of the Consummation Date, become, and

thereafter forever remain, satisfied, discharged, released,

cancelled, null and void and of no effect whatever. All

right, title and interest of the respective trustees of such

mortgages and indentures are hereby transferred to and vested

in the Reorganized Company as of the Consummation Date. In

furtherance and confirmation of such discharge and release of

mortgages and indentures, each trustee now acting under such

mortgages, indentures, collateral trust indentures or other

- 9 -

instruments is hereby authorized and directed to execute and
deliver, as of the Consummation Date, deeds or instruments of
release, discharge and satisfaction thereof in recordable
form, satisfactory to the Reorganized Company. Without limit-
ing the generality of the foregoing, each trustee now acting
under the First Mortgage Indenture, dated December 1, 1919,
and supplemental indentures securing the First Mortgage Bonds,
and under the General Income Mortgage Indenture dated as of
July 1, 1940, and supplemental indentures securing the Income
Bonds, is hereby authorized and directed to execute and deliver
to the Reorganized Company, as of the Consummation Date, mort-
gage discharges substantially in the respective forms approved
in Section 1.01 (e) and (f) of this Order. Whether executed
before or after the Consummation Date, each of said instruments
shall be effective as of the Consummation Date. Each trustee
acting under such mortgages or indentures is authorized and
directed to transfer, convey, release and delivery to the
Debtor's Trustees, or, upon the order of the Debtor's Trustees,
                                        the
to the Reorganized Company, as of/Consummation Date, all sums
of money in such trustee's hands, or subject to its disposition,
as trustee, paying agent, escrow agent or fiduciary, and all
shares of stock, evidences of indebtedness, other securities,
credits, choses in action and other property, rights and inter-
ests of every kind or description held or claimed by it as
trustee, paying agent, escrow agent or fiduciary. The execution

- 10 -

of instruments and the transfer and delivery of properties pursuant to this Section 5.04 shall be solely for the purpose of releasing and conveying to the Debtor's Trustees or the Reorganized Company, as the case may be, whatever interest such trustees have as trustees, paying agents, escrow agents or fiduciaries, and no personal covenant or liability shall be implied against or be assumed or undertaken by any such trustee by virtue of compliance with this Order. Each such trustee is hereby further authorized and directed, from time to time after the Consummation Date, to execute all such other and further instruments of discharge, release, satisfaction, transfer, conveyance or assignment and to make all further transfers and deliveries as may be necessary or desirable for more fully and certainly vesting in the Debtor's Trustees or the Reorganized Company, as the case may be, all right, title and interest of such trustees and for more fully and certainly accomplishing the release, discharge, cancellation and satisfaction of the instruments under which such trustees were respectively appointed and acting.

5.05. Cancellation and Destruction. Prior to the Consummation Date, the Debtor's Trustees shall take such steps as may be necessary and desirable to discontinue trading as of the Consummation Date in all the securities of the Debtor. Effective as of the Consummation Date, the presently author-

ized common stock and preferred stock of the Debtor and
the bonds heretofore issued by the Debtor shall be cancelled,
and the Debtor's Trustees and the Reorganized Company are
hereby authorized, from time to time, to cause the cancella-
tion or destruction of all bonds, coupons, debentures, notes,
certificates, evidences of indebtedness, shares of stock and
other securities or evidences of interest therein (i) that
evidence claims surrendered by any of the holders of such
instruments in exchange for cash payable or Common Stock or
Redeemable Preference Shares issuable under the Amended Plan
or (ii) issued under any of the mortgages, indentures, deeds
or agreements referred to in Section 5.04 of this Order.

    5.06.  Discharge of Debtor's Trustees.  As of the Consumma-
tion Date, the Debtor's Trustees shall be discharged and re-
lieved of any further duties and responsibilities in respect
of the administration of the property or the conduct of the
business and affairs transferred to the Reorganized Company on
the Consummation Date, and the Debtor's Trustees shall no
longer have any power and authority or duties and responsibili-
ties to take any action on behalf of or in respect to the Re-
organized Company; PROVIDED, however, that the Debtor's
Trustees are authorized and directed to prepare additional
reports as provided in Section 8.03 of this Order.

    All of the monthly general balance sheets, quarterly and
annual condensed statements of income, and monthly statements

of cash receipts and disbursements filed with the court prior to the date of this Order by the Debtor's Trustees, and all of the Statements of Investments held by the Debtor's Trustees (Restricted Funds) so filed by them pursuant to Order No. 347-D and Order No. 412 in these proceedings are hereby accepted and approved.

Any person who fails to file with the court on or before July 31, 1983 notice of any claim or action of any nature against any current or former Trustee of the Debtor, in his personal capacity, based on any alleged act or failure to act at any time on or prior to the Consummation Date in respect of the administration of the Debtor shall be forever barred from asserting any such claim or action against any such Trustee, the Debtor or the Reorganized Company. Any such notice shall be in writing and shall state with particularity the nature of the claim or action and the relief sought. The current and former Debtor's Trustees, the Debtor and the Reorganized Company shall be forever discharged and released from any liability with respect to any such claims or actions notices of which are not so filed on or before July 31, 1983. The Debtor's Trustees are directed to give notice of the provisions of this final paragraph of Section 5.06 by publication once a week for two successive weeks, the last publication to be not less than seven (7) days prior to July 31, 1983, in The New York Times, The Wall Street Journal

- 13 -

and a newspaper of general circulation in each of the fol-
lowing cities: Boston, Massachusetts; Concord, New Hamp-
shire; Portland, Maine; Albany, New York; Burlington,
Vermont; and Hartford, Connecticut. The Debtor's Trustees
shall further cause a copy of such notice to be mailed to
all parties customarily receiving notices in these proceed-
ings and to all persons, if any, known to have such claims.

5.07. Indemnification of Debtor's Trustees and their Agents.
At all times after the Consummation Date the Reorganized Com-
pany is authorized and directed to indemnify and hold harm-
less the Debtor's Trustees and their predecessors as Trustees
of the Property of the Debtor, their officers and employees,
and any persons who have served as directors or officers of
other companies at the Debtor's Trustees' request, in accord-
ance with and subject to the provisions of a resolution in
the form approved in Section 1.01 of this Order. The Board
of Directors of the Reorganized Company is authorized and
directed to adopt the said resolution on the Consummation
Date, and said resolution as so adopted shall not be revoked,
modified or amended except in accordance with an Order of
this court entered pursuant to its reserved jurisdiction.

Notwithstanding anything contained in the first paragraph
of this Section 5.07, such indemnification shall not extend
to the payment of expenses, judgments, fines or amounts paid
in settlement by any Debtor's Trustee or former Debtor's

- 14 -

Trustee in connection with any action, suit or proceed-
ing against such Debtor's Trustee brought by or in the
right of any creditor of the Debtor alleging actionable
personal misconduct by such Debtor's Trustee in the treat-
ment of a claim against the Debtor which existed on or
prior to March 12, 1970, but such indemnification shall,
in any/instance, be payable out of the Segregated Account,
         such
by Order of this court, if the conduct of the Debtor's
Trustee or former Debtor's Trustee in question is found
by the court to have met the standard required by the terms
of such resolution for indemnification by the Reorganized
Company.

5.08.  Prosecution and Defense of Legal Proceedings.  The
Reorganized Company shall be substituted at its own cost
and expense as a party in lieu of the Debtor's Trustees
in any and all litigation to which the Debtor's Trustees
may be parties on the Consummation Date and may continue
such litigation in the name of the Reorganized Company.

  Notwithstanding anything contained in the preceding para-
graph, and without in any way limiting the authority of the
reorganized Company thereby granted, the Debtor's Trustees
are hereby authorized and empowered:

          (a)   to participate (i) in the defense of the
                Amended Plan against appeals from the Commis-
                sion's and the court's approval or confirma-
                thereof and (ii) in the pending petitions for review
                with respect to the Commission's Order approving control

- 15 -

of the Reorganized Company by Guilford;

(b) to institute and prosecute all such suits,
actions, claims in set-off, counterclaims or
other proceedings as they may deem appropriate
to collect or retain, for the benefit of those
parties entitled to payment out of the Segre-
gated Account, all monies, credits and other
assets to which the Trustees
of the Segregated Account may be entitled.

5.09.  Compliance with FRA Purchase Agreement.  As of the

Consummation Date, the Reorganized Company and the United

States, by the Secretary of Transportation (the "Secretary")

or the Secretary's duly authorized agent, shall execute and

deliver a Preference Share Agreement in the form of Exhibit

F annexed to the Purchase Agreement dated September 29, 1978

between the Debtor's Trustees and the United States.  The

Reorganized Company shall thereupon issue Redeemable Pref-

erence Shares to the United States, as provided in Section

3.02 of this Order, and the Secretary or the Secretary's duly

authorized agent shall in consideration therefor cancel and

deliver to the Reorganized Company the Debtor's Trustees'

Certificates referred to in Section 3.02 of this Order and

shall execute and deliver to the Reorganized Company all such

discharges, releases and termination statements as may be

necessary to cancel and terminate, of record or otherwise,

any and all security interests held by the United States as

security for the Debtor's Trustees' Certificates.  From and

after the Consummation Date the Reorganized Company shall

assume and be solely responsible for all of the Debtor's

Trustees' obligations under the Purchase Agreement, if any, and the United States shall look solely to the Re-organized Company for such performance.

5.10.  Conveyance from the Debtor's Trustees to the Reor-ganized Company.  In furtherance and confirmation of the transfer of all of the properties to be transferred to the Reorganized Company by virtue of Section 5.01 of this Order which are presently of record in the name of the Debtor's Trustees, the Debtor's Trustees are authorized and directed to execute and deliver to the Reorganized Company deeds transferring all right, title and interest of the Debtor's Trustees in such property, effective as of the Consummation Date.  Such deeds shall be substantially in the form approved by Section 1.01 of this Order.  The Debtor's Trustees or their duly authorized designees are further authorized and directed after the Consummation Date, if necessary, to execute and deliver to the Reorganized Company any and all such further deeds, conveyances, bills of sale, assignments, transfers and other instruments as may be necessary or proper for more fully and certainly conveying, assigning, transferring and delivering to the Reorganized Company all right, title and interest of the Debtor's Trustees in and to the properties formerly of the Debtor or the Debtor's Trustees.

VI.  SATISFACTION OF CLAIMS AND ASSUMPTION OF OBLIGATIONS

6.01.  Notice of Availability of Cash.  As promptly as pos-

- 17 -

şible but not later than thirty (30) days after the Con-
summation Date, the Debtor's Trustees shall publish a
Notice of Exchange and Availability of Cash ("Notice"),
in such form as they shall deem appropriate, and shall
cause a copy of the Notice to be mailed to each registered
holder of First Mortgage Bonds or Income Bonds of the Debtor
and to each other bond holder or other claimant (i) whose
identity and address is known to the Debtor's Trustees,
(ii) who is entitled to participate under the Amended Plan
and (iii) who is a holder of such Bonds or whose claim has
been approved, acknowledged or allowed as of the Consumma-
tion Date.  The Notice shall be published once a week for
two successive weeks in The New York Times, The Wall Street
Journal and a newspaper of general circulation in each of
the following cities:  Boston, Massachusetts; Concord, New
Hampshire; Portland, Maine; Albany, New York; Burlington,
Vermont; and Hartford, Connecticut.  The Debtor's Trustees
shall further cause a copy of the Notice to be mailed to
each claimant who is entitled to participate under the
Amended Plan, whose address is known and whose claim is
approved, acknowledged or allowed subsequent to the Consum-
mation Date as promptly as possible after the date upon
which the claim is so approved, acknowledged or allowed.

6.02.  Issuance and Delivery of New Securities and Payment
of Cash.

(a)  The Reorganized Company and the agents referred

- 18 -

to in Section 1.03 of this Order shall, as promptly
as practicable, in accordance with the instructions
of the Debtor's Trustees and the Reorganized Company,
                                      and
execute certificates for the Common Stock / Redeemable
Preference Shares of the Reorganized Company substan-
tially in the respective forms approved in Section 1.01
of this Order and authenticate, issue and deliver the
same in accordance with the provisions of this Order
and the Amended Plan.

(b)    On the Consummation Date, upon payment by the Shaw-
mut Bank of Boston, N.A., as Escrow Agent, and Guilford
of an aggregate of $ 24,250,000 to the Debtor's Trustees,
the Reorganized Company shall issue and deliver to Guil-
ford a certificate or certificates, in the form approved
in Section 1.01(d) of this Order, for 2,425,000 shares
of new Common Stock.

(c)    On the Consummation Date, following authorization
by the Board of Directors of the Reorganized Company
of the issuance of Redeemable Preference Shares in
Series A, upon presentation and surrender of the
Debtor's Trustees' Certificate 1978-A (4R/505) issued
to the United States by the Debtor's Trustees in the
maximum face amount of $ 25,600,000.00 (and under which
a total of $ 25,530,000.00 has actually been advanced
pursuant to the Purchase Agreement of September 29, 1978

- 19 -

between the Debtor's Trustees and the United

States) and in full satisfaction and cancellation

thereof, the Reorganized Company shall issue.and

deliver to the United States a certificate or

certificates representing 2,553 Redeemable Pref-

erence Shares, Series A, in the form approved by

Section 1.01(b) of this Order.

(d)  On the Consummation Date, following author-

ization by the Board of Directors of the Reor-

ganized Company of the issuance of Redeemable Pref-

erence Shares in Series B, upon presentation and

surrender of the Debtor's Trustees' Certificate

1978-B (4R/505) issued to the United States by

the Debtor's Trustees in the maximum face amount of

$ 400,000.00 and in full satisfaction and cancella-

tion thereof, the Reorganized Company shall issue

and deliver to the United States a certificate for

40 Redeemable Preference Shares, Series B, in the

form approved in Section 1.01(c) of this Order.

(e)  The Debtor's Trustees shall provide to the

First Mortgage Bond Claims Agent, the Income Bond

Claims Agent and Exchange Agent drafts, payable from

the Segregated Account, to be used to disburse such

cash as they are required to disburse pursuant to

the Amended Plan, and such drafts shall be honored,

if properly endorsed, upon presentation.

(f)   The issuance, transfer and exchange of new Com-
mon Stock and Redeemable Preference Shares and the
execution, delivery, filing and recording of docu-
ments, as authorized and provided in this Order and
the documents herein approved, are all pursuant to
the Amended Plan, which has been confirmed by this
court in accordance with the provisions of Section 77
of the Bankruptcy Act and are for the purposes of
carrying out and putting into effect such Amended
Plan.  No further authorization or approval by any
court or administrative, regulatory or other body,
including without limitation the approval of the
Interstate Commerce Commission pursuant to Section
20a of the Interstate Commerce Act, 49 U.S.C. 20a,
is required for such purposes or for the validation
of any securities issued and actions taken pursuant
to this Order.

6.03.  Termination of Right to Receive Cash or CCIs
Under the Amended Plan.  The rights of all holders of
bonds, creditors and claimants  to receive cash or
CCIs, upon the surrender of bonds or execution of
release forms, as provided in the Amended Plan and
this Order, shall terminate five years after the Con-
summation Date or, as to claims asserted as of the

Consummation Date but not approved, acknowledged
or allowed until after the fourth anniversary of
the Consummation Date, one year after the date of
such approval, acknowledgment or allowance.  Holders
of bonds, creditors and claimants who do not surrender
their bonds or execute release forms within such
period shall not be entitled to participate under
the Amended Plan; PROVIDED, however, that nothing in
this Section 6.03 shall affect the right of any claim-
ant or creditor to receive a distribution of cash or
CCIs if some but not all of the claims of any such
claimant or creditor within each class under the
Amended Plan have been approved, acknowledged or
allowed as of the date upon which such right would
otherwise terminate pursuant to this Section 6.03.
Any such cash in the Segregated Account not distribu-
ted within such period shall become the sole and ex-
clusive property of the Reorganized Company, free
and clear of any right, title and interest in others,
the escheat or abandonment of property laws of any
state to the contrary notwithstanding, subject to
the proviso contained in the last sentence of Section
3.9 of the Amended Plan.  Not less than sixty (60)
days and not more than ninety (90) days before the
fifth anniversary of the Consummation Date, the Trustees

- 22 -

shall cause to be published a notice that the right
to receive cash and CCIs as provided in the Amended
Plan shall terminate, subject to the exception re-
ferred to above for claims which are approved, acknowl-
edged or allowed after the fourth anniversary of the
Consummation Date.  Such notice shall be published at
least once in each of the newspapers referred to in
Section 6.01 of this Order.

6.04.  <u>Assumption of Claims by Reorganized Company</u>.
The following claims and obligations shall be assumed
and satisfied by the Reorganized Company:

> (a)  Subject to payment from the Segregated
> Account to the Reorganized Company of such
> cash as is required to be paid by Section 3.3(2),
> paragraph First, of the Amended Plan, the Re-
> organized Company is authorized and directed to
> pay out of any assets available to it such
> amounts (i) as may be called for by drafts,
> checks or vouchers signed or bills approved
> prior to the Consummation Date by the Debtor's
> Trustees or any person thereunto duly author-
> ized by the Debtor's Trustees, for goods or
> services provided before the Consummation
> Date; (ii) as may be necessary for the payment
> of obligations which accrued prior to the Con-

summation Date for goods or services ordered,
contracted for or authorized for purchase by
the Debtor's Trustees or any person thereunto
duly authorized by the Debtor's Trustees; and
(iii) as may be necessary to satisfy other
Administration Claims which are not satisfied
in full prior to the Consummation Date and
which relate to the conduct of the Debtor's
business or the acquisition, maintenance or
disposition of its properties, except costs of
administration relating to the formulation,
approval, confirmation and/or implementation
of the Amended Plan and except all allowances
to the Debtor's Trustees and their counsel
Charles W. Mulcahy, Jr. and accountant M. G.
Sherman.

(b)   The Reorganized Company is authorized and
directed to assume each executory contract of
the Debtor which has been adopted by the Debtor's
Trustees.   All prebankruptcy executory contracts
not so assumed are disaffirmed and rejected,
effective as of the Consummation Date but relating
back to March 12, 1970, and the Reorganized Com-
pany shall have no responsibility to carry out
the terms of such contracts.

(c)  As of the Consummation Date, the Reor-
ganized Company is authorized and directed to
assume and comply with all agreements of the
Debtor's Trustees, including without limitation
(i) any agreements for the financing of the
purchase of property such as the Loan Agree-
ment of April 1, 1982 between the Debtor's
Trustees and Guilford relating to the purchase
from ConRail of certain lines in Western Massa-
chusetts and Connecticut, the Conditional Sale
Agreement dated as of September 15, 1975 among
the Debtor's Trustees, Southern Iron & Equipment
Company and the National Shawmut Bank of Boston
(now by change of name Shawmut Bank of Boston,
N.A.) relating to the purchase of certain box
cars, and all equipment leases entered into by
the Debtor's Trustees during the reorganization
period, and (ii) any agreements for the sale of
property which have been approved by the Debtor's
Trustees or their designees and which, but for
the occurrence of the Consummation Date, would
have been consummated by the Debtor's Trustees
pursuant to a final order specifically authoriz-
ing such sale or a general order authorizing
sales if the consideration is less than an amount

specified in such general order.

Upon such assumption and compliance by the Reor-
ganized Company, it shall be substituted for the
Debtor's Trustees in all respects under any such
agreements, and such substitution shall not give
rise to any rights of or claims by the other
parties to any such agreements, including, with-
out limiting the generality of the foregoing,
any right to contend that the substitution gives
rise to a claim for breach of the agreement or
acceleration of any amounts payable under the
agreement.

VII.  EXECUTION AND RECORDATION OF DOCUMENTS

7.01.  Execution and Delivery of Documents.  The Debtor's
Trustees or either of them, or such persons as the Debt-
or's Trustees may by resolution designate, and the ap-
propriate duly elected officers of the Reorganized Com-
pany are hereby authorized and directed to execute and
deliver or to have executed and delivered the documents
approved in Section 1.01 of this Order to which they are
parties, and to execute and deliver or to have executed
and delivered, in the case of the Debtor's Trustees, all
such other conveyance documents, bills of sale, assign-
ments and other instruments as may be necessary and
proper, in accordance with Section 5.10 of this Order,

to convey, assign and transfer all of the right,
title and interest of the Debtor and the Debtor's
Trustees in and to the properties to be vested in the
Reorganized Company, and, in the case of the officers
of the Reorganized Company, to assume and indemnify
the Debtor's Trustees in accordance with Section 5.07
of this Order.  Whether executed before or after the
Consummation Date, each of said instruments shall be
.effective as of the Consummation Date unless other-
wise expressly provided therein.

7.02.  Recording and Filing Documents.

(a)  The Reorganized Company is authorized and
directed to promptly file or record, but not
later than sixty (60) days after the Consumma-
tion Date,

> (i)  in each of the jurisdictions in which
> the Reorganized Company owns real property,
> a copy of this Order; and

> (ii) in each of the jurisdictions in which
> the Reorganized Company owns real property
> and in which any mortgage of the Debtor
> released and discharged pursuant to Sec-
> tion 5.04 of this Order was previously
> recorded, a copy of this Order, the dis-
> charges approved in Section 1.01 (e) and
> (f) of this Order, and any other discharges
> covering property in said jurisdiction which
> is received by the Company; provided, how-
> ever, that this Order need not be filed and
> recorded more than once in any such juris-
> diction.

(b)  The recording officer of each jurisdiction

referred to in Section 7.02(a) of this Order
shall, upon presentation of a duly executed
counterpart thereof, accept for recording any
of the documents referred to in Section 7.02(a)
of this Order.

(c)  If the recordation or taxation laws or
regulations of any jurisdiction require that
any of the documents referred to in Section
7.02(a) of this Order contain real property
descriptions which are more specific than, or
otherwise differ from, those contained in such
documents, the Reorganized Company is authorized
and directed to execute, deliver, file and record,
as soon after the Consummation Date as is rea-
sonably practicable, amendatory or supplemental
deeds or other documents which comply with such
laws or regulations.

## VIII.  FURTHER PROCEEDINGS

8.01  Injunction.  All persons, firms, governmental
entities and corporations, wherever situated, located
or domiciled, are hereby permanently restrained and
enjoined from instituting, prosecuting or pursuing,
or attempting to institute, prosecute or pursue, any
suits  or proceedings, at law or in equity or otherwise,
against the Debtor's Trustees or the Reorganized Com-

pany or its or their successors or assigns or against
the Segregated Account or any of the assets or property
of the Reorganized Company or its successors or assigns,
directly or indirectly, on account of or based upon any
right, claim or interest of any kind or nature whatso-
ever which any such person, firm, governmental entity
or corporation may have in, to or against the Debtor,
the Debtor's Trustees or any of their assets or proper-
ties, and from interfering with, attaching, garnishing,
levying upon, enforcing liens against or upon, or in any
manner whatsoever disturbing, any portion of the property,
real, personal or mixed, of any kind or character, on or
at any time after the Consummation Date in the possession
of the Debtor's Trustees or the Reorganized Company and
from interfering with or taking steps to interfere with
the Reorganized Company, its officers and agents, or the
operation of the properties or the conduct of the business
of the Reorganized Company by reason of or on account of
any obligation or obligations incurred by the Debtor or
the Debtor's Trustees in these proceedings, except the
obligations imposed on the Debtor's Trustees or the Reor-
ganized Company by the Amended Plan and this Order or
reserved for resolution or adjudication by this Order.
All persons, firms, governmental entities and corpora-
tions, wherever situated, located or domiciled, are here-

- 29 -

by restrained and enjoined from instituting, prosecuting
or pursuing or attempting to institute, prosecute or
pursue any action, suit or proceedings, at law, in
equity or otherwise, against the Debtor's Trustees or
the Reorganized Company or any of its or their assets
or property, directly or indirectly, except such actions,
suits or proceedings as may be for the purpose of carry-
ing out this Order or consummating the Amended Plan.
Any other provision of this Order to the contrary not-
withstanding, the consummation of the Amended Plan and
any action taken pursuant to this Order shall not prej-
udice the rights of appellants to prosecute pending
appeals from the Approval Order or appeals which may be
taken from the Confirmation Order or this Order.

8.02.  Reservation of Jurisdiction.  From and after the
Consummation Date, the court hereby reserves jurisdic-
tion, which shall be exclusive to the extent that under
applicable law such jurisdiction is presently exclusive:

> (a)  To consider and approve the report of the
> Debtor's Trustees as provided in Section 8.03
> of this Order and to discharge the Debtor's
> Trustees;

> (b)  To the extent not previously determined by
> this court, to fix the amounts of allowances of
> compensation for services heretofore or here-
> after rendered and reimbursement of expenses
> heretofore or hereafter incurred under Sec-
> tions 77(c)(2) and 77(c)(12) of the Bankrupt-
> cy Act in connection with these proceedings
> or the Amended Plan or the execution of this
> Order;

(c)  To consider and act in the matter of any proofs of claims against the Debtor or claims for administration expenses against the Debtor or the Debtor's Trustees, including without limitation action to deny any such claims, to adjudicate the amount or validity thereof, to classify such claims, to provide for the satisfaction of such claims and to approve settlements of any such claims;

(d)  To consider and act in respect of any claim of the Debtor or the Debtor's Trustees, in respect of any petition or matter pending before the court as of the Consummation Date or in respect of any agreement or matter to which the Debtor's Trustees are or the Debtor is a party, as to which the court presently has asserted jurisdiction and which has not been adjudicated, discharged, resolved or terminated as of the Consummation Date;

(e)  To consider and act on any application for instructions with respect to the distribution of funds or the issuance of new Common Stock, Redeemable Preference Shares or CCIs in connection with this Order and the Amended Plan, to construe this Order and the Amended Plan as to matters which may require interpretation or construction and which are not dealt with in this Order and to consider and act upon any matter as to which jurisdiction is reserved by this Order;

(f)  To consider and take appropriate action with respect to the injunctive provisions of this Order;

(g)  To take such further action and to enter such further orders as may be necessary to cure any defect, supply any omission, reconcile any inconsistency and put into effect and carry out this Order and the Amended Plan and all other orders relative thereto entered by this court and to prevent interferences therewith; provided, however, that nothing in this Section 8.02 shall be construed as a reservation of jurisdiction to change the terms of the Amended Plan as confirmed or any of the rights vested thereunder;

(h)  To consider and act in the matter of (i) any claim or action against any current or former _

Debtor's Trustee or Trustees of the Property
of the Debtor, in his or their personal capac-
ity, including claims or actions filed pursuant
to Section 5.06 of this Order, or actions against
the officers or employees of any of the Debtor's
Trustees or persons who have served as officers
or directors at their request, arising out of
any act or omission of any such person in re-
spect of the administration of the Debtor's
operations or estate during these proceedings,
and (ii) any application of such Debtor's
Trustees, officers or employees or persons who
served as officers or directors at such Debtor's
Trustees' request for indemnification from liabili-
ties and expenses in respect of such actions, or
any other actions in which such individuals are
personally involved, pursuant to Section 5.07 of
this Order or the Indemnification Resolution
approved in Section 1.01 of this Order and adopted
by the Reorganized Company pursuant to Section
5.07 of this Order; and

(i)  To enter a Final Decree discharging the
Debtor's Trustees from all of their remaining
responsibilities under the Amended Plan and here-
under, and terminating these proceedings.

8.03.  Additional Reports.  Within ninety (90) days

after the Consummation Date, the Debtor's Trustees shall

file with the court a report that shall include (i) a

General Balance Sheet as of the close of the Consumma-

tion Date (but before giving effect to the consummation)

prepared in accordance with Interstate Commerce Commis-

sion accounting rules and certified as correct by Peter

W. Carr, Vice President - Finance, or other Chief Account-

ing Officer for the Debtor's Trustees, and (ii) a Con-

densed Statement of Income for the period from the end

of the month covered by the last such statement filed

with the court through the end of the Consummation Date,

- 32 -

similarly prepared and certified, in the same form as

the monthly Condensed Statements of Income heretofore

filed with the court.
                                        after the date
  Within one hundred and eighty (180) days/of the

Order confirming the Amended Plan, the Debtor's Trus-

tees shall, in compliance with Clause (9) of Bankrupt-

cy Rule No. 8-208, file with the court a report stating

the progress made in the consummation of the Amended

Plan and summarizing the claims or interests which have

not been surrendered or released, in accordance with

the Amended Plan and this Order.

8.04.  Termination of Proceedings.  Except as the court

has specifically reserved jurisdiction by this Order,

except as the court hereby reserves jurisdiction to

file a supplementary order concerning consummation of

the Amended Plan, all jurisdiction of this court in or

by reason of these proceedings shall be terminated and

these proceedings closed effective as of the entry of

the Final Decree.

8.05.  Appeals.

        (a)  From and after the Consummation Date, the

        court hereby reserves jurisdiction to direct the

        distribution of whatever amounts of cash or secu-

        rities may be necessary to carry out the result-

        ing final order in the event the claims of the

- 33 -

City of Cambridge, which has appealed from
the order approving the Amended Plan, are
sustained in whole or in part on appeal or
remand after appeal and the Debtor's Trustees
shall make any distribution so ordered.  Pend-
ing further order of the court, the Debtor's
Trustees shall maintain at all times an amount
of cash in the Segregated Account in excess of
the amount of the post-petition interest on all
real estate taxes secured by statutory liens,
asserted in said appeal.

(b)   This Consummation Order and any consumma-
tion of the Amended Plan are without prejudice
to or impairment of the rights or standing of
Cambridge to continue to prosecute its claims
on appeal, it being the intention of the pro-
visions of this Section 8.05(b) that Cambridge
shall have the same substantive rights to said
appeal following consummation as it has prior
to consummation.

Dated  June 17, 1983                     Senior District Judge

### FOOTNOTE

1.  In the order of notice of the time and place of the hearing
    of the petition [document no. 4687] for entry of a consumma-
    tion order, the court required that all objections to the
    Debtor's Trustees' proposed consummation order be filed with
    the court on or before May 31, 1983.  The following objec-
    tions and claims were filed pursuant to the order of notice:

    (a)  Objections of the Second Mortgage Trustees, and their
         petition to authorize holdback from payments to bond-
         holders.

    (b)  Objection of Sherburne, Powers and Needham to Section
         8.03 of the Debtor's Trustees' proposed consummation
         order [Section 8.02 of this Order of the court], and
         their request that the court reserve jurisdiction to
         consider allowance of counsel fees concerning the
         "six months claims" litigation; which objection and
         request George W. McLaughlin adopted and in which he
         joined.

    (c)  Objection of Vermont and Massachusetts Railroad Com-
         pany, and its claims against the Debtor's Trustees
         for (i) cost of rehabilitating the Turners Falls
         Branch, and (ii) reimbursement of legal expenses.

    (d)  Request of Foley, Hoag and Eliot that the court re-
         serve jurisdiction to consider allowance of counsel
         fees concerning the "six months claims" litigation.

    (e)  Requests of Guilford Transportation Industries, Inc,
         that the Debtor's Trustees' proposed consummation
         order be revised or amended in respect of Section
         5.01 of, and the form of the indemnification resolu-
         tion referred to in Section 1.01 of, such proposed
         consummation order.

    (f)  Motion of United Transportation Union for stay of
         order for consummation of Amended Plan pending deter-
         mination of employees' wage and benefit claims under
         Award of Arbitration Board 387, the Railway Labor Act
         and otherwise.

    At the hearing, requests were made of the court for leave to
    file additional documents on or before June 6, 1983, and
    leave was granted to file specified documents by the follow-
    ing persons:

    (a)  To Foley, Hoag and Eliot, an amendment to Section 8.03(b)
         of the Debtor's Trustees' proposed order of consummation
         [Section 8.02(b) of this Order of the court].

(b)  To James F. Freeley, Jr., counsel for United Transporta-
     tion Union, an affidavit of Roger Lenfest, chairman of
     the Union.

CERTIFICATE OF AMENDMENT
OF
CERTIFICATE OF INCORPORATION
OF
BOSTON AND MAINE CORPORATION

Pursuant to Section 303 of the General Corporation Law
of the State of Delaware

───────────────────

Boston and Maine Corporation, a corporation duly organized
and existing under the General Corporation Law of the State of
Delaware (the "Corporation") and originally incorporated in the
State of Delaware on March 27, 1963, does hereby certify as
follows:

FIRST:  That the Certificate of Incorporation of the
Corporation was filed in the office of the Secretary of State
of Delaware on the 27th day of March, 1963.

SECOND:  That the Certificate of Incorporation of the
Corporation is hereby amended by striking out Article Fourth
and substituting therefor the following:

"Fourth.  The Corporation shall have authority to issue
a total of 3,000,000 shares of Common Stock of the par
value of $1 per share and a total of 2,600 Redeemable
Preference Shares of the par value of $10,000 per share.

The voting powers, designations, preferences, rights,
qualifications and limitations of such Common Stock and of
the Redeemable Preference Shares, shall be as follows:

In case of liquidation or dissolution or winding-up
of the Corporation, whether voluntary or involuntary, the
holders of the Common Stock shall be entitled to receive,
out of the assets of the Corporation available for
distribution to its stockholders (whether capital or
surplus), Ten Dollars ($10.00) per share.  In addition,
after payment in full to the holders of the Redeemable
Preference Shares as hereinafter set forth, the holders of
the Common Stock shall be entitled to share ratably in all
of the remaining assets of the Corporation available for
distribution to its shareholders.

The Board of Directors shall have authority to issue Redeemable Preference Shares from time to time in one or more series of any number of shares, provided that the aggregate number of shares issued and not cancelled shall not exceed a total of 2,600 shares. The designations, preferences, rights, qualifications and limitations of the Redeemable Preference Shares shall be those set forth in Exhibit B to the Preference Share Agreement, the form of which is annexed as Exhibit F to the Purchase Agreement dated September 29, 1978 entered into between the United States of America represented by the Secretary of Transportation acting through the Administrator of the Federal Railroad Administration and Robert W. Meserve and Benjamin H. Lacy, Trustees of the Property of the Boston and Maine Corporation. A copy of said Exhibit B is filed with the Corporation's Articles of Incorporation, as amended, and is incorporated herein by reference as fully as if set forth in full in this Article Fourth.

The Redeemable Preference Shares shall have the limited voting power to elect two directors under certain circumstances of default as described in the aforesaid Exhibit B. All other voting power shall be vested in the holders of Common Stock and such holders shall be entitled to one (1) vote per share.

No right to subscribe for or take any stock or shares, or to participate in any increase of capital or the issue of any additional stock, shall appertain to the Common Stock or the Redeemable Preference Shares. No shares of Common Stock having the preferences relative to the Redeemable Preference Shares set forth above and in said Exhibit B shall at any time be issued, other than those issued pursuant to the Corporation's Plan of Reorganization."

IN WITNESS WHEREOF, this Certificate has been executed by Robert W. Meserve and Benjamin H. Lacy, as Trustees of the Property of Boston and Maine Corporation in Proceedings for the Reorganization of a Railroad, pending in the United States District Court for the District of Massachusetts (Case No.

70-250-M) pursuant to the Consummation Order of the said Court entered May   , 1983, and the statutory authority granted by Section 77(b) of the Bankruptcy Act of July 1, 1898, 30 Stat. 544, as amended (former U.S.C. Title 11) made applicable to Boston and Maine Corporation and said Proceedings by §403 of the Bankruptcy Code, 92 Stat. 2549 (1978), the present U.S.C. Title 11.

_____

Robert W. Meserve


_____

Benjamin H. Lacy

Appx 1x B.

SHARES
Series A

NUMBER

SPECIMEN

**BOSTON AND MAINE CORPORATION**

Incorporated Under The
Laws
of the State
of
Delaware

With respect to the issuance or sale of these securities by railroads, the securities represented by this certificate have been exempted from the provisions of Section 20A of the Interstate Commerce Act (49 U.S.C. 20a), the registration and prospectus delivery requirements of the Securities Act of 1933, and the provisions of the securities laws of every State, under Section 510 of the Railroad Revitalization and Regulatory Reform Act of 1976 (45 U.S.C. 830). These securities may not be sold or transferred except in accordance with the provisions of the Agreement as defined below.

This certifies that _____ is the owner of

FULLY-PAID AND NON-ASSESSABLE 4.2% CUMULATIVE, REDEEMABLE PREFERENCE SHARES, SERIES A ($10,000 INITIAL PAR VALUE subject to reduction pursuant to the provisions of the Company's Charter) of BOSTON AND MAINE CORPORATION transferable, in whole or in part, by the holder hereof in person or by duly authorized attorney on the books of said Company, upon surrender of this certificate properly endorsed. THE COMPANY WILL FURNISH WITHOUT CHARGE TO EACH STOCKHOLDER WHO SO REQUESTS THE POWERS, DESIGNATIONS, PREFERENCES AND RELATIVE, PARTICIPATING, OPTIONAL OR OTHER SPECIAL RIGHTS OF EACH CLASS OF STOCK OR SERIES THEREOF AND THE QUALIFICATIONS, LIMITATIONS OR RESTRICTIONS OF SUCH PREFERENCES AND/OR RIGHTS.

Each taker and subsequent holder of these shares (or part) by taking or holding the same, consents and agrees that these shares, when endorsed in blank, may be deemed negotiable, and that the holder, when these shares (or part) have been so endorsed, may be treated by the Company and all other persons dealing with these shares (or part) as the absolute owner hereof for any purpose and as the person entitled to exercise the rights represented hereby or entitled to transfer hereof on the books of the Company, any notice to the contrary notwithstanding; but until such transfer on such books, the Company may treat the registered holder as the owner for all purposes. This certificate and the shares represented hereby are issued, received and held, subject to those provisions of the Certificate of Incorporation of the Company, as amended (the "Charter") set forth in the Certificate of Amendment of the Charter dated May     , 1983, and Exhibit B to the Preference Share Agreement dated May     , 1983, between the United States of America and the Company (the "Agreement"), a copy of which Exhibit is filed with the Charter, as so amended, and incorporated therein by reference, to which provisions the holder by acceptance hereof, assents. These shares shall be subject to and entitled to the benefit of the Agreement.

It is specifically noted that the Company and the holder of these shares intend the shares to be equity securities subject to the provisions of the Charter and the Agreement. In the event that the shares become a debt obligation as provided in the Charter and the Agreement, the Company promises to pay to the order of the holder hereof interest and principal payments in accordance with the Agreement and the Charter.

IN WITNESS WHEREOF the said Company has caused this certificate to be signed and validated by its duly authorized officers.

Dated:

# BOSTON AND MAINE CORPORATION

The Company has outstanding the following classes of shares having preferences or special rights in the payment of dividends, in voting, upon liquidation or otherwise:

(1) Redeemable Preference Shares, Series A and B, and

(2) Common Stock, par value $1 per share

Upon request, the Company will furnish any stockholder, without charge, information as to the number of such shares authorized and outstanding and a copy of the portions of the Charter containing the designations, preferences, limitations and relative rights of all shares and any series thereof.

The Company shall assign this certificate for new certificates of different denomination but of like tenor for shares having a minimum initial par value of ten thousand dollars ($10,000) and representing in the aggregate the total par value of the Preference Shares, Series A, being surrendered, upon surrender of this certificate by the holder thereof at the executive offices of the Company.

The Company shall issue new shares upon transfer or exchange without charge to any holder for any issuance tax in respect thereof; provided, however, that the Company shall not be required to pay any tax which may be payable with respect to the transfer or exchange involved in the delivery of such new shares.

The Company shall at no time close its transfer books against the transfer of any of the Preference Shares, Series A, where such closing would interfere with a timely transfer for record date purpose.

With respect to these shares, the Company will deem notice of a change of address for record date purposes received as of the postmark of such notice if sent by the holder by registered or certified mail, return receipt requested and postage prepaid to the Company at its executive offices or at such other address as it may be designated in writing by the Company.

Subject to the provisions of the Company's Charter, dividends and redemption installments on these shares shall be payable annually on the anniversary date of the date of issuance hereof (which appears on the face of this certificate) commencing in the year 19___ in accordance with the following payment schedule, unless modified in accordance with the Agreement.

| Anniversary Date of the Date of Issuance | Dividends Per Share | Redemption Installments Per Share |
| --- | --- | --- |
| 11 | $421.66 | $328.34 |
| 12 | 402.82 | 346.48 |
| 13 | 393.39 | 364.61 |
| 14 | 374.55 | 371.65 |
| 15 | 362.68 | 387.32 |
| 16 | 346.35 | 403.65 |
| 17 | 329.33 | 420.67 |
| 18 | 311.59 | 438.41 |
| 19 | 293.10 | 456.90 |
| 20 | 273.84 | 476.16 |

| Anniversary Date of the Date of Issuance | Dividends Per Share | Redemption Installments Per Share |
| --- | --- | --- |
| 21 | $253.76 | $496.24 |
| 22 | 232.84 | 517.16 |
| 23 | 211.03 | 539.17 |
| 24 | 188.30 | 561.70 |
| 25 | 164.62 | 585.38 |
| 26 | 139.93 | 610.07 |
| 27 | 114.21 | 635.79 |
| 28 | 87.40 | 662.60 |
| 29 | 59.46 | 690.54 |
| 30 | 30.34 | 719.66 |

Appendix C

NUMBER

Incorporated Under The
Laws
of the State
of
Delaware

SPECIMEN

SHARES
Series B

BOSTON AND MAINE CORPORATION

With respect to the issuance or sale of these securities by railroads, the securities represented by this certificate have been exempted from the provisions of Section 20A of the Interstate Commerce Act (49 U.S.C. 20a), the registration and prospectus delivery requirements of the Securities Act of 1933, and the provisions of the securities laws of every State, under Section 510 of the Railroad Revitalization and Regulatory Reform Act of 1976 (45 U.S.C. 830). These securities may not be sold or transferred except in accordance with the provisions of the Agreement as defined below.

This certifies that                                              is the owner of

($10,000 INITIAL PAR VALUE subject to reduction pursuant to the provisions of the Company's Charter) of FULLY-PAID AND NON-ASSESSABLE 2-19% CUMULATIVE, REDEEMABLE PREFERENCE SHARES, SERIES B BOSTON AND MAINE CORPORATION transferable, in whole or in part, by the holder hereof in person or by duly authorized attorney on the books of said Company, upon surrender of this certificate properly endorsed. THE COMPANY WILL FURNISH WITHOUT CHARGE TO EACH STOCKHOLDER WHO SO REQUESTS THE POWERS, DESIGNATIONS, PREFERENCES AND RELATIVE, PARTICIPATING, OPTIONAL OR OTHER SPECIAL RIGHTS OF EACH CLASS OF STOCK OR SERIES THEREOF AND THE QUALIFICATIONS, LIMITATIONS OR RESTRICTIONS OF SUCH PREFERENCES AND/OR RIGHTS. Each taker and subsequent holder of these shares (or part) by taking or holding the same, consents and agrees that these shares, when endorsed in blank, shall be deemed negotiable, and that the holder, when these shares (or part) have been so endorsed, may be treated by the Company and all other persons dealing with these shares (or part) as the absolute owner hereof for any purpose and as the person entitled to exercise the rights represented hereby or entitled to transfer hereof on the books of the Company, any notice to the contrary notwithstanding; but until such transfer on such books, the Company may treat the registered holder as the owner for all purposes. This certificate and the shares represented hereby are issued, received and held, subject to those provisions of the Certificate of Incorporation of the Company, as amended (the "Charter") set forth in the Certificate of Amendment of the Charter dated May    , 1983, and Exhibit B to the Preference Share Agreement dated May    , 1983, between the United States of America and the Company (the "Agreement"), a copy of which Exhibit is filed with the Charter, as so amended, and incorporated therein by reference, to which provisions the holder by acceptance hereof, assents. These shares shall be subject to and entitled to the benefit of the Agreement.

It is specifically noted that the Company and the holder of these shares intend the shares to be equity securities subject to the provisions of the Charter and the Agreement. In the event that the shares become a debt obligation as provided in the Charter and the Agreement, the Company promises to pay to the order of the holder hereof interest and principal payments in accordance with the Agreement and the Charter.

IN WITNESS WHEREOF the said Company has caused this certificate to be signed and validated by its duly authorized officers.

Dated:

## BOSTON AND MAINE CORPORATION

The Company has outstanding the following classes of shares having preferences or special rights in the payment of dividends, in voting, upon liquidation or otherwise:

(1) Redeemable Preference Shares, Series A and B, and

(c) Common Stock, par value $1 per share

Upon request, the Company will furnish any stockholder, without charge, information as to the number of such shares authorized and outstanding and a copy of the portion of the Charter containing the designations, preferences, limitations and relative rights of all shares and any series thereof.

The Company shall exchange this certificate for new certificates of different denominations but of like tenor for shares having a minimum initial par value of ten thousand dollars ($10,000) and representing in the aggregate the total par value of the Preference Shares, Series B, being surrendered, upon surrender of this certificate by the holder thereof at the executive offices of the Company.

The Company shall issue new shares upon transfer or exchange without charge to any holder for any issuance tax in respect thereof; provided, however, that the Company shall not be required to pay any tax which may be payable with respect to the transfer or exchange involved in the delivery of such new shares.

The Company shall at no time close its transfer books against the transfer of any of the Preference Shares, Series B, where such closing would interfere with a timely transfer for record date purposes.

With respect to these shares, the Company will deem notice of a change of address (or record date purposes for record date purposes received as of the postmark of such notice if sent by the holder by registered or certified mail, return receipt requested and postage prepaid to the Company at its executive offices or at such other address as may be designated in writing by the Company.

Subject to the provisions of the Company's Charter, dividends and redemption installments on these shares shall be payable annually as the anniversary date of the date of issuance hereof (which appears on the face of this certificate) commencing in the year 19_____ in accordance with the following payment schedule, unless modified in accordance with the Agreement.

| Anniversary Date of the Date of Issuance | Dividends Per Share | Redemption Installments Per Share |
|---|---|---|
| 11 | $2,516.72 | $ 28.50 |
| 12 | 2,511.54 | 35.68 |
| 13 | 2,502.55 | 44.63 |
| 14 | 2,491.30 | 55.92 |
| 15 | 2,477.22 | 70.00 |
| 16 | 2,459.59 | 87.63 |
| 17 | 2,437.51 | 109.71 |
| 18 | 2,409.88 | 137.34 |
| 19 | 2,375.29 | 171.93 |
| 20 | 2,331.59 | 215.33 |

| Anniversary Date of the Date of Issuance | Dividends Per Share | Redemption Installments Per Share |
|---|---|---|
| 21 | $2,271.77 | $ 269.45 |
| 22 | 2,209.91 | 337.31 |
| 23 | 2,124.95 | 422.27 |
| 24 | 2,018.59 | 528.63 |
| 25 | 1,865.45 | 661.77 |
| 26 | 1,718.76 | 828.46 |
| 27 | 1,510.10 | 1,037.12 |
| 28 | 1,248.88 | 1,298.34 |
| 29 | 921.86 | 1,625.36 |
| 30 | 511.54 | 2,034.44 |

Append1

SEE LETT't ND ON REVERSE

**BOSTON AND MAINE CORPORATION**

Incorporated under the laws of the State of Delaware

Common Stock Par Value $1 Per Share

# This Certifies That

Common _____ Shares of the Capital Stock of

**BOSTON AND MAINE CORPORATION**

_____ as the owner of

transferable only on the books of the Corporation by the holder hereof in person or by attorney upon surrender of this Certificate properly endorsed.

**In Witness Whereof** said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation this _____ day of _____ A.D. 19

_____ President

_____ Treasurer



Shares Each

THE COMPANY WILL FURNISH WITHOUT CHARGE TO EACH STOCKHOLDER
WHO SO REQUESTS THE POWERS, DESIGNATIONS, PREFERENCES AND
RELATIVE, PARTICIPATING, OPTIONAL OR OTHER SPECIAL RIGHTS OF
EACH CLASS OF STOCK OR SERIES THEREOF AND THE QUALIFICATIONS,
LIMITATIONS OR RESTRICTIONS OF SUCH PREFERENCES AND/OR RIGHTS.

## DISCHARGE OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that First National Bank of
Boston (successor to Old Colony Trust Company) and Malcolm W.
Hall (duly appointed and qualified successor to Craig B. Haines,
said Haines having been the duly appointed and qualified successor
to S. Parkman Shaw, Jr.), Trustees, holders of a certain Mortgage
Indenture dated December 1, 1919 by and between the Boston & Maine
Railroad and Old Colony Trust Company and S. Parkman Shaw, Jr.,
Trustees, which Mortgage Indenture was modified by numerous
Supplemental Indentures, the most recent Supplemental Indenture
being dated September 27, 1968, which Mortgage Indenture was
recorded with the various Registries of Deeds, County Clerks
offices, or Town Land Records as set forth in Exhibit A hereto,
hereby certify that said Mortgage Indenture has been paid in full,
acknowledge satisfaction of said Mortgage Indenture, release and
discharge the lien of said Mortgage Indenture, and consent that
the same be discharged of record.

IN WITNESS WHEREOF, the said Malcolm W. Hall has set his
hand and seal and said First National Bank of Boston has caused
its corporate seal to be hereto affixed and these presents to
be signed in its name and behalf by

its                             this                      day of              ,
1983.

Signed in the presence of:      FIRST NATIONAL BANK OF BOSTON

_____         By_____
                                                          Trustee


_____         _____
                                Malcolm W. Hall, Trustee

-2-

THE COMMONWEALTH OF MASSACHUSETTS

, ss.                                              , 1983

Then personally appeared the above-named
and acknowledged the foregoing instrument to be the free act
and deed of First National Bank of Boston, before me,

_____
Notary Public

My commission expires:


THE COMMONWEALTH OF MASSACHUSETTS

, ss.                                              , 1983

Then personally appeared the above-named Malcolm W. Hall
and acknowledged the foregoing instrument to be his free act and
deed, before me,

_____
Notary Public

My commission expires:

## Exhibit A

Record references of mortgage between Boston & Maine

Railroad and Old Colony Trust et al, Trustees:

| County (Clerk) | Book | Page |
|---|---|---|
| Saratoga | 222 | 124 |
| Washington | 130 | 32 |
| Rensselaer | 397 | 1 |
| Schenectady | 240 | 1 |

OC-NH

## Exhibit A

Record references of mortgage between Boston & Maine

Railroad and Old Colony Trust et al, Trustees:

| County (Registry of Deeds) | Book | Page |
|---|---|---|
| Belknap | 155 | 304 |
| Carroll | 158 | 61 |
| Cheshire | 390 | 354 |
| Coos | 198 | 3 |
| Grafton | 553 | 433 |
| Hillsborough | 775 | 397 |
| Merrimack | 444 | 284 |
| Rockingham | 736 | 40 |
| Strafford | 391 | 141 |
| Sullivan | 203 | 50 |

## Exhibit A

Record references of mortgage between Boston & Maine

Railroad and Old Colony Trust et al, Trustees:

| County (Registry of Deeds) | Book | Page |
|---|---|---|
| York | 676 | 9 |
| Cumberland | 1038 | 321 |

## Exhibit A

Record references of mortgage between Boston & Maine

Railroad and Old Colony Trust et al, Trustees:

| County (Registry of Deeds) | Book | Page |
|---|---|---|
| Berkshire (North Dist.) | 357 | 1 |
| Essex | 409 | 5 |
| Essex (South Dist.) | 2435 | 423 |
| Franklin | 651 | 2 |
| Hampden | 1051 | 1 |
| Hampshire | 754 | 401 |
| Middlesex (North Dist.) | 618 | 201 |
| Middlesex (South Dist.) | 4315 | 7 |
| Suffolk | 4186 | 5 |
| Worcester District | 2198 | 3 |
| Worcester (North Dist.) | 356 | 426 |

## Exhibit A

Record references of mortgage between Boston & Maine Railroad
and Old Colony Trust et al, Trustees:

| Town Land Records | Book | Page |
|---|---|---|
| Barnet | 35 | 1 |
| Barton | 37 A | 1 |
| Bradford | 26 | 224 |
| Brattleboro | 56 | 476 |
| Burke | 19 B | |
| Coventry | 16 | 649 |
| Derby | 36 | 129 |
| Fairlee | 15 | 305 |
| Hartford | C | 45 |
| Irasburg | 17 | 457 |
| Lunenburg | 1 | 140 of Corpn Deeds |
| Lyndon | 32 | 1 |
| Newbury | 35 | 53 |
| Newport | 2 | 51 |
| Norwich | 24 | 1 |
| Pownal | 39 | 350 |
| Rockingham | 61 | 400 |
| Ryegate | 18 | 462 |
| Sheffield | 20 | 62 |
| St. Johnsbury | 64 | 1 |
| Sutton | Y-1 | 1 |
| Thetford | 29 | 221 |
| Vernon | 15 | 406 |
| Waterford | 21 | 135 |

## DISCHARGE OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that State Street Bank and Trust Company (formerly known as State Street Trust Company) and Daniel Golden (duly appointed and qualified successor to Howard B. Phillips, said Phillips having been the duly appointed and qualified successor to Dana M. Dutch), Trustees, holders of a certain Mortgage Indenture dated July 1, 1940 by and between the Boston & Maine Railroad and State Street Trust Company and Dana M. Dutch, Trustees, which Mortgage Indenture was modified by numerous Supplemental Indentures, the most recent being dated September 27, 1968, which Mortgage Indenture was recorded with the various Registries of Deeds, County Clerks' offices, or Town Land Records as set forth in Exhibit A hereto, hereby certify that said Mortgage Indenture has been paid in full, acknowledge satisfaction of said Mortgage Indenture, release and discharge the lien of said Mortgage Indenture, and consent that the same be discharged of record.

IN WITNESS WHEREOF, the said Daniel Golden has set his hand and seal and said State Street Bank and Trust Company has caused its corporate seal to be hereto affixed and these presents to be signed in its name and behalf by

its _____ this _____ day of _____ , 1983.

Signed in the presence of:          STATE STREET BANK AND TRUST COMPANY

_____          By_____
                                                               Trustee

_____          _____
                                   Daniel Golden, Trustee

-2-

THE COMMONWEALTH OF MASSACHUSETTS

, ss.                                                    , 1983

Then personally appeared the above-named

and acknowledged the foregoing instrument to be the free act

and deed of State Street Bank and Trust Company, before me,

_____

Notary Public

My commission expires:

THE COMMONWEALTH OF MASSACHUSETTS

, ss.                                                    , 1983

Then personally appeared the above-named Daniel x. Golden

and acknowledged the foregoing instrument to be his free act and

deed, before me,

_____

Notary Public

My commission expires:

## Exhibit A

Record references of Mortgage Indenture between Boston & Maine Railroad and State Street Bank and Trust Company et al, Trustees:

| Town Land Records | Book | Page |
|---|---|---|
| Barnet | 48 | 1 |
| Barton | 42 | 173 |
| Bradford | 30B | 1 |
| Brattleboro | 77 | 47 |
| Burke | 21 | 303 |
| Coventry | 19 | 120 |
| Derby | 44 | 183 |
| Fairlee | 18B | 1 |
| Hartford | Misc. Records C'b | |
| Irasburg | 20 | 86 |
| Lyndon | 36 | 194 |
| Newbury | 3B | |
| Newport | 12 | 136 |
| Norwich | 26B | |
| Pownal | 50 | 367 |
| Rockingham | 99 | 1 |
| Ryegate | 21B | |
| St. Johnsbury | 83B | 1 |
| .tton | 27 | 99 |
| Thetford | 35B | |
| Vernon | 23 | 65 |
| Waterford | 28B | |

## Exhibit A

Record references of Mortgage Indenture between Boston & Maine Railroad and State Street Bank and Trust Company et al, Trustees:

| County (Registry of Deeds) | Book | Page |
|---|---|---|
| Belknap | 247 | 63 |
| Carroll | 222 | 50 |
| Cheshire | 489 | 252 |
| Coos County | 311 | 1 |
| Grafton | 692 | 373 |
| Hillsborough | 1005 | 352 |
| Merrimack | 578 | 53 |
| Rockingham | 975 | 45 |
| Strafford | 498 | 51 |
| Sullivan | 275 | 51 |

SS-Mass.

## Exhibit A

Record references of Mortgage Indenture between Boston & Maine
Railroad and State Street Bank and Trust Company et al, Trustees:

| County (Registry of Deeds) | Book | Page |
|---|---|---|
| Berkshire County, North District | 436 | 40 |
| Essex County, North District | 633 | 61 |
| Essex County, South District | 3229 | 62 |
| Franklin County | 850 | 35 |
| Hampden County | 1696 | 218 |
| Hampshire County | 953 | 81 |
| Middlesex County, North District | 949 | 71 |
| Middlesex County, South District | 6414 | 185 |
| Suffolk County | 5870 | 65 |
| Worcester County, North District | 565 | 76 |
| Worcester County, Worcester Dist. | 2785 | 421 |

SS-NY

## Exhibit A

Record references of Mortgage Indenture between Boston & Maine
Railroad and State Street Bank and Trust Company et al, Trustees:

| County (Clerk) | Book | Page |
|---|---|---|
| Rennselaer County | 624 | 219 |
| Saratoga County | 286 | 363 |
| Schenectady County | 421 | 43 |
| Washington County | 168 | 271 |

## Exhibit A

Record references of Mortgage Indenture between Boston & Maine Railroad and State Street Bank and Trust Company et al, Trustees:

| County (Registry of Deeds) | Book | Page |
|---|---|---|
| Cumberland County | 1614 | 178 |
| York County | 956 | 1 |

## RELEASE DEED

ROBERT W. MESERVE and BENJAMIN H. LACY, Trustees of the
Property of Boston and Maine Corporation in the proceedings for
the reorganization of a railroad, No. 70-250-M in the United
States District Court for the District of Massachusetts, for
consideration paid of less than $100.00, grant to Boston and
Maine Corporation, a Delaware corporation, all of the right,
title and interest of said Trustees in the real estate
described in Exhibit A attached hereto and made a part hereof.

WITNESS our hands and seals this        day of
1983.

_____
Robert W. Meserve, Trustee

_____
Benjamin H. Lacy, Trustee

### COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                              , 1983

Then personally appeared the above-named Robert W. Meserve
and acknowledged the foregoing instrument to be his free act and
deed, before me,

_____
Notary Public

My commission expires:

-2-

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                           , , 1983

Then personally appeared the above-named Benjamin H. Lacy
and acknowledged the foregoing instrument to be his free act and
deed, before me,

_____

Notary Public

My commission expires:

Indemnification Resolution of the Board
of Directors of Reorganized Company

WHEREAS the United States District Court for the District of
Massachusetts (the "Court"), having jurisdiction of the
proceedings for the reorganization of the Boston and Maine
Corporation (the "reorganized Company"), pursuant to Section 77 of
the Bankruptcy Act has, by its Consummation Order, instructed the
Board of Directors of the reorganized Company to adopt a
resolution to indemnify and hold harmless the Trustees of the
property of the Boston and Maine Corporation,ʺ Debtor (the
"Estate") and their predecessors as such Trustees (together, the
"Trustees" and individually a "Trustee"); the officers and
employees of the Trustees; and certain other persons: and

WHEREAS the Court has, by the same Order, retained
jurisdiction to hear and adjudicate all claims against such
persons and to determine whether such persons are entitled to
indemnification under the following indemnification resolution; IT
IS HEREBY:

RESOLVED that:

A.  The reorganized Company shall indemnify any person who
was, is or becomes a party, or is threatened to be made a party,
to any completed, pending, threatened or future action, suit or
proceedings, whether civil, criminal, administrative or
investigative (other than an action subject to the following
paragraph B of this resolution) by reason of the fact that such
person was a Trustee, an officer or employee of a Trustee, or a
person serving at the request of the Trustees as a director or
officer of another corporation against expenses (including
attorney's fees), judgments, fines and amounts paid in settlement
actually and reasonably incurred by him in connection with such
action, suit or proceedings if he acted in good faith and in a
manner he reasonably believed to be in, or not opposed to, the
best interests of the Estate or of such other corporation, and,
with respect to any criminal action or proceeding, had no
reasonable cause to believe his conduct was unlawful; provided,
however, that no such indemnification shall be made in connection
with any action, suit or proceeding against a Trustee brought in
the right of any creditor of the Debtor alleging actionable
personal misconduct by such Trustee in respect of a claim against
the Debtor which existed on or prior to March 12, 1970.  The

termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in, or not opposed to, the best interests of the Estate or of such other corporation, and, with respect to any criminal action or proceeding, that such person had no reasonable cause to believe that his conduct was unlawful.

B.   The reorganized Company shall indemnify any person who was, is or becomes a party, or is threatened to be made a party, to any completed, pending, threatened or future action or suit by or in the right of the Boston and Maine Corporation, whether as Debtor or as the reorganized Company, to procure a judgment in its favor, by reason of the fact that such person was a Trustee, an officer or employee of a Trustee, or a person serving at the request of the Trustees as a director or officer of another corporation against expenses (including attorney's fees) actually and reasonably incurred by such person in connection with the defense or settlement of such action or suit if such person acted in good faith and in a manner such person reasonably believed to be in, or not opposed to, the best interests of the Estate or of such other corporation, except that no indemnification shall be made in respect of any such claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of such person's duties unless and only to the extent that the Court shall determine that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court shall deem proper; provided, however, that no such indemnification shall be made in connection with any action or suit against a Trustee brought in the right of any creditor of the Debtor alleging actionable personal misconduct by such Trustee in respect of a claim against the Debtor which existed on or prior to March 12, 1970.

C.   To the extent that a person seeking indemnification by the reorganized Company has been successful on the merits or otherwise in defense of any action, suit or proceeding for which indemnification is authorized by paragraph A and/or B of this resolution, or in defense of any claim, issue or matter therein, he shall be indemnified by the reorganized Company against expenses (including attorney's fees) actually and reasonably incurred by him in connection therewith.

D.   Indemnification under paragraphs A or B of this resolution (unless ordered by the Court) shall be made by the reorganized

Company only as authorized in the specific case upon a determination that indemnification of the person seeking indemnity is proper in the circumstances because he has met the applicable standard of conduct set forth in paragraphs A and B of this resolution, and in the case of a person seeking indemnity, in connection with service as a director or officer of another corporation at the request of the Trustees, that adequate indemnification from such corporation is not available to provide such person with indemnification of the nature described in this resolution. Any determination under this paragraph D shall be made (1) by the Board of Directors of the reorganized Company by a majority vote of a quorum consisting of directors who were not parties to the action, suit or proceeding in question, or (2) if such a quorum is not obtainable, or even if obtainable a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, (3) by the stockholders of the reorganized Company or (4) by the Court.

E.   Expenses incurred in defending a civil or criminal action, suit or proceeding shall be paid by the reorganized Company in advance of the final disposition of such action, suit or proceeding upon receipt of a written undertaking by or on behalf of the person involved to repay such amount unless it shall ultimately be determined that such person is entitled to be indemnified by the reorganized Company as authorized in this resolution. The Board of Directors may decline to provide advance payment of expenses if it (1) determines that adequate indemnification is available from the corporation which such person served as an officer or director at the request of the Trustees, or (2) determines that the person involved does not appear to have met the applicable standards of conduct set forth in this resolution, as applied to the circumstances of the particular case. Any determination adverse to the person involved shall not be effective unless approved by the Court upon application by the reorganized Company.

F.   This indemnification resolution shall apply to each person covered hereby from the respective effective date of the appointment of each such person as a Trustee, employee, or officer of the Trustees or person serving as a director or officer of another corporation at the request of the Trustees, as the case may be. The indemnification provided in this resolution shall inure to the benefit of the heirs, executors and administrators of the person entitled thereto.

**FOLEY HOAG** LLP
ATTORNEYS AT LAW

John M. Stevens
Boston Office
617-832-1159
jstevens@foleyhoag.com

May 4, 2004

## Certified Mail-Return Receipt Requested

Robert Culliford, Esquire
Corporate Counsel
Boston & Maine Corporation
Iron Horse Park
High Street
North Billerica, Massachusetts 01862-1679

MAY - 5 2004

Re:   Notification under Chapter 21E, Section 4A;
       Boston Engine Terminal, Somerville, Massachusetts

Dear Mr. Culliford:

This office represents the Massachusetts Bay Transportation Authority (the "MBTA"), owner of the former Boston Engine Terminal in Somerville, Massachusetts (the "BET" or the "Site"). Pursuant to Section 4A of the of the Massachusetts Oil and Hazardous Materials Release Prevention Response Act, M.G.L.c. 21E ("Chapter 21E"), this letter notifies the Boston & Maine Corporation (the "B&M") of its liability to the MBTA for costs incurred and to be incurred in responding to the release of oil and hazardous materials at the Site. The purpose of this notification is to facilitate resolution of the respective responsibilities of the parties for contamination at the Site without litigation. I suggest you notify your insurance company of this demand.

## I.    The MBTA and Its Relationship to the Site.

The MBTA is a body politic and corporate, and a political subdivision of the Commonwealth of Massachusetts, established under the provisions of M.G.L. c. 161A, as amended. The MBTA provides mass transportation services, including bus, subway and light rail, throughout eastern Massachusetts.

The BET, also now known as the MBTA Commuter Rail Maintenance Facility ("CRMF"), occupies approximately 34 acres in Somerville, Boston, and Cambridge, Massachusetts. The Site has been an active railroad maintenance facility and rail yard since the late 1800s.

FHBoston/1031178.4

Robert Culliford
May 4, 2004
Page - 2 -

The B&M owned the Site from 1929 to 1976, and during that time conducted various railroad, maintenance and other commercial activities on the property. Such activities involved the operation, storage and repair of coal-powered and, later, diesel-powered locomotives. The MBTA acquired the BET from the B&M in December 1976 as part of a larger transaction in which the MBTA purchased B&M commuter rail lines lying north and west of Boston. Although the MBTA assumed ownership of the BET at that time, the B&M continued to be the primary operator of the BET until 1986.

In the mid-1990's, the MBTA conducted significant renovations of the BET in order to update the aging facilities. Those renovations included the construction of the new CRMF facility, as well as the demolition or refurbishment of many of the historic buildings on-site. Concurrent with that work. the MBTA was also required to address significant contamination of the Site that had resulted from the historic railroad and maintenance activities conducted there.

## II.    Response Actions at the Site

The MBTA has been required to carry out significant and costly response actions to address the widespread contamination of the BET in accordance with Chapter 21E and the Massachusetts Contingency Plan ("MCP"), 310 CMR 40.000, *et. seq*. Those response actions consisted of both investigations of the extent of the contamination and remedial efforts designed to cleanup the contamination on-Site.

Investigations undertaken by the MBTA identified extensive contamination of the Site by petroleum hydrocarbons, i.e., oil. Some other contaminants, such as chlorinated volatile organic compounds ("VOCs"), were also detected in soil and groundwater, but the primary contaminant of concern was weathered diesel fuel. Petroleum hydrocarbons were detected in soil, in the groundwater, and as floating separate-phase hydrocarbon ("SPH") underlying the Site. Phase I and Phase II investigations of the Site indicated a large, primary plume of floating SPH in the central portion of the Site (the observed thickness of the oil in this plume ranged from 0.5 to 5 feet), as well as smaller areas of SPH in the southern and eastern portions of the Site (observed thickness ranging from .03 to 1.7 feet). The predominant petroleum product identified at the Site (by fingerprint analysis) during those investigations was diesel oil/No. 2 fuel oil.[1]  In addition, because of the threat of off-site contamination identified in those previous investigations, the MBTA was also required to perform a preliminary assessment and risk characterization study for the nearby Millers River to determine what impact the on-Site contamination had on that eco-system.

Subsequent remedial activities performed by the MBTA included the removal and disposal of contaminated soils, reduction of the floating SPH and treatment of the contaminated groundwater. Specifically, the MBTA removed and disposed of

---

[1] Diesel fuel is virtually indistinguishable from No. 2 fuel oil by the fingerprinting analysis.

FHBoston/1031178.4

Robert Culliford
May 4, 2004
Page - 3 -

approximately 100,000 cubic yards of petroleum-contaminated soil. A groundwater and oil extraction and treatment system was constructed thereafter to mitigate groundwater contamination by petroleum-hydrocarbons and reduce the amount of floating SPH at the Site. The MBTA operated that groundwater extraction and treatment system from April 1997 to December 2001.

The removal of the petroleum-contaminated soil during the CRMF facility construction and the construction and operation of the oil extraction and treatment system together greatly reduced the distribution and thickness of the floating SPH product on the Site. However, closure studies undertaken in the Fall of 2002 indicated that areas of residual floating SPH remain. As a result, a Permanent Solution as defined in the MCP has not been achieved at the Site, and a Class C-Response Action Outcome Statement, documenting a Temporary Solution under the MCP, was filed for the Site in October of 2002. The MBTA is currently performing monitoring of the conditions at the Site to determine whether a Permanent Solution can be achieved in the future and whether future remedial efforts in addition to the on-going monitoring will be required.

To date, the MBTA has expended in excess of $15,340,810 to investigate and subsequently to remediate the contamination at the BET. Furthermore, the MBTA is continuing to incur costs in connection with the required on-going monitoring of the Site. That work is currently estimated to cost $47,000 for the period through the second quarter of 2005, with additional sums required thereafter. Finally, additional remedial efforts could also be required in the future to achieve a Permanent Solution under the MCP, which would entail significant additional expenditures.

## III.    Basis for B&M's Liability at the Site

The MBTA believes that the B&M is a liable party under, *inter alia*, subsection 5(a)(2) of Chapter 21E because it owned and/or operated the BET at the time of releases of oil or hazardous materials. As noted above, the primary contaminant of concern at the Site was diesel oil, which was used in abundance by the B&M during its ownership and operation of the BET. Indeed, there were numerous documented releases of oil during the B&M's ownership and operation of the Site.

Those releases include leaks from several large above-ground and under-ground diesel fuel storage tanks. For example, releases from a 1,000,000-gallon storage tank (installed by the B&M in approximately 1949) were estimated to have resulted in approximately 2,000 to 4,000 cubic yards of contaminated soil. Likewise, the highest concentrations of VOC's detected on-site were in the vicinity of a 25,000-gallon underground salvaged oil tank of unknown age that had been installed during the B&M's ownership of the Site. Those releases constitute only a portion of the contamination that resulted from the numerous other historic storage tanks discovered at the Site. In short, all of the evidence indicates that the contamination at the Site is directly attributable to the B&M's historic use, storage and handling of oil and hazardous substances at the Site.

FHBoston/1031178.4

Robert Culliford
May 4, 2004
Page - 4 -

## IV.    B&M's Proposed Contribution, Reimbursement, or Equitable Share

The B&M is responsible for substantially all of the contamination of the BET.
The B&M either owned or operated the BET continually from 1929 to 1986, during
which frequent releases of oil and hazardous substances occurred in connection with the
B&M's operations. Accordingly, the MBTA demands that the B&M reimburse it for
95 percent of the cleanup costs it has expended to date, as well as those it will incur in
the future.

Pursuant to Section 4A of Chapter 21E, you have 45 days from receipt of this
notification to respond in writing. If you dispute liability, please send all related
documents, including but not limited to corporate transactional documents, you contend
show that you are not liable for the contamination at the Site. If you fail to respond or
fail to agree to pay your equitable share of liability for the response costs in connection
with the Site, you may be subject to liability not only for all response costs but also for
costs, property damages, interest, and attorneys' fees pursuant to Chapter 21E,
Section 5A(d) (1)-(3).

The MBTA looks forward to your response and the expedited resolution of this
matter.

Sincerely,

John M. Stevens

JMS:mlb

cc:    Michael H. Mulhern, General Manager, MBTA
       Gerri R. Scoll, Esquire
       William A. Mitchell, Esquire
       Douglas McGarrah, Esquire, Foley Hoag LLP

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) Boston and Maine Corporation v. Massachusetts Bay Transportation Authority

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| ☐ | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
| ☒ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. |
| | | *Also complete AO 120 or AO 121 for patent, trademark or copyright cases |
| ☐ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
| ☐ | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
| ☐ | V. | 150, 152, 153. |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES ☐   NO ☒

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☒   NO ☐

    A.    If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☒   Central Division ☐   Western Division ☐

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES ☐   NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME    Katherine E. Potter, Esq.

ADDRESS    Iron Horse Park, North Billerica, MA 01862

TELEPHONE NO.    (978) 663-1215

(CategoryForm.wpd - 5/2/05)

℈JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Boston and Maine Corporation

**(b)** County of Residence of First Listed Plaintiff    MIDDLESEX
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Katherine E. Potter, Esq. 978-663-1215
Iron Horse Park, N. Billerica, MA 01862

## DEFENDANTS

Massachusetts Bay Transportation Authority

County of Residence of First Listed Defendant    SUFFOLK
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Act of July 1, 1898, 30 Stat. 544
Brief description of cause:
Enforce consummation order

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
8/10/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE