UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON AND MAINE
CORPORATION,

Plaintiff,                           Civil Action No. 05-11656 NMG

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,

Defendants.

## ANSWER AND COUNTERCLAIMS OF DEFENDANT
## MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

Defendant and Plaintiff in Counterclaim Massachusetts Bay Transportation Authority

(the "MBTA") hereby counterclaims against plaintiff Boston and Maine Corporation (the

"B&M") and answers its complaint as follows:

## COUNTERCLAIMS

### First Counterclaim -
### Recovery of Response Costs under Mass. Gen. Laws, c. 21E, § 4

#### Introduction

1.       The MBTA counterclaims to recover costs it has incurred and will continue to

incur in responding to historic contamination at the Boston Engine Terminal (the "Terminal") c

the "Site) caused by the B&M. The counterclaims are brought pursuant to the Massachusetts ::

and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E ("Chapter 21E ")

Section 4, which provides for reimbursement of response costs from other liable parties and fc r

declaratory judgment of future rights and responsibilities of the parties under Chapter 21E. To

date, the MBTA has incurred response costs in an amount not less than $15,340,810 by reason f

releases of diesel fuel at the Site while the B&M owned or operated the Terminal.

## Parties

2.       Plaintiff-in-Counterclaim MBTA is a body politic and corporate and a politica

subdivision of the Commonwealth of Massachusetts, established under the provisions of M.C.l

c. 161A, as amended, with its principal offices in Boston, Massachusetts.

3.       Defendant in Counterclaim B&M is a Delaware corporation with its principal

office in Iron Horse Park in North Billerica, Massachusetts.

## Historic Operations at the Boston Engine Terminal

4.       The Terminal, also now known as the MBTA Commuter Rail Maintenance

Facility, occupies approximately 34 acres in Somerville, Boston and Cambridge, Massachuset

5.       The Terminal has been used as an active railroad maintenance facility and rail

yard since the late 1800s.  The B&M owned and operated the Terminal from 1929 until

December 26, 1976, when it was purchased by the MBTA, and continued to operate the

Terminal until December 31, 1986.

6.       During its ownership and operation of the Terminal, the B&M conducted railr ,

maintenance and other commercial activities on the property.  These activities included

operation, storage and repair of diesel powered locomotives beginning in or about the 1940s n

continuing until the B&M ceased operating the Site.

7.     In the course of the B&M's maintenance and operation of diesel powered locomotives at the Terminal, there were substantial releases of oil and hazardous materials to tl  environment.

8.     The releases of diesel oil described in paragraph 7 continued until the B&M ceased operating the Site.

9.     Operations at the Site improved thereafter with the growing awareness of the environmental impacts of oil releases. By the mid-1990s the MBTA had constructed a new Commuter Rail Maintenance Facility on the Site that included the installation of safeguards to prevent future releases of oil or hazardous materials.

## The MBTA's Response to the Contamination of the Terminal

10.    In July 1984, the MBTA's consultants completed an Oil Recovery Study at the Terminal. The MBTA had commissioned the study to assess the economic feasibility of recovering separate-phase, or floating, petroleum product. The study concluded that recovere i oil could not be reused as diesel fuel and recommended, among other things, notifying the Massachusetts Department of Environmental Quality Engineering ("DEQE") of the condition; the Site and recovering the floating petroleum product. Prior to that time, the DEQE had no involvement with the Site, and the MBTA was not aware that the oil present in soils at the Site might trigger involvement of the DEQE.

11.    In July 1989, the DEQE issued a Notice of Responsibility for the Site to the MBTA. The Notice of Responsibility was the MBTA's first notification that it might be requir l by DEQE to perform remedial activities to clean up the Site. The MBTA submitted a

B3095620.1                              - 3 -

Preliminary Site Assessment and Phase I Limited Site Investigation to the DEQE in November 1989.

12.     Subsequent investigations undertaken by the MBTA identified extensive contamination of the Site. The primary contaminant of concern identified was weathered diesel fuel, but other contaminants also were detected in soil and groundwater. Oil was detected in soil, in the groundwater and as floating separate-phase hydrocarbon ("SPH") underlying the Site. The Phase I and Phase II investigations undertaken by the MBTA indicated a large primary plume of floating SPH underlay the central portion of the site and that smaller areas of SPH existed in the southern and eastern portions of the Site.

13.     Because of the threat of off-site contamination, the MBTA was also required to perform an assessment and risk characterization study for the nearby Millers River, to determine what impacts the oil contamination at the Site might have on that ecosystem.

14.     In response to the identified contamination, the MBTA performed remedial actions at the Terminal. Those remedial actions included the removal and disposal of contaminated soils and construction of a groundwater and oil extraction and treatment system designed to reduce the amount floating SPH and treat oil contaminated groundwater.

15.     In October, 2002, the MBTA submitted a Phase V Completion Report and Class C Response Action Outcome ("RAO") Statement to the Massachusetts Department of Environmental Protection, the DEQE's successor agency. This report documented that a Temporary Solution had been achieved for the Site, but that further remedial efforts could be required if on-going monitoring of the Site indicated the presence of additional recoverable SPH. The MBTA has been conducting post-RAO monitoring since October 2002.

16.      To date, the MBTA has incurred costs in investigating and remediating the contamination at the Terminal in an amount not less than $15,340,810.

## The MBTA's Claims Against the B&M

17.      On May 4, 2004 the MBTA's attorneys sent a demand letter to the B&M pursu a t to Section 4A of Chapter 21E. That letter outlined the basis for the B&M's liability to the MBTA and demanded that the B&M reimburse the MBTA for the past and future costs it has incurred and will incur in responding to contamination caused by the B&M. That demand let c is attached to the complaint as Exhibit B.

18.      The B&M responded to the MBTA's demand letter by requesting additional information from the MBTA and asserting various defenses to liability. One of the defenses asserted by the B&M was that its liability to the MBTA for contamination at the Terminal wa s discharged in the course of the B&M's bankruptcy proceedings, pursuant to the June 17, 1983 Consummation Order.

19.      The parties exchanged subsequent correspondence concerning the MBTA's claims and the B&M's purported defenses, and also met in person to discuss those claims on November 12, 2004. On June 7, 2005 the MBTA sent a renewed demand for reimbursement o response costs and settlement offer to counsel for the B&M.

20.      In response to that June 7, 2005 letter, the B&M filed this lawsuit seeking to convert its potential bankruptcy defense into a cause of action for enforcement of the 1983 Consummation Order and injunctive relief against the MBTA.

**The B&M's Statutory Liability**

21.     The releases of diesel oil at the Terminal described in paragraphs 7 and 8
constitute releases of "oil" or "hazardous material" at a "site" as those terms are defined in
Chapter 21E of the Massachusetts General Laws.

22.     The actions described in paragraphs 10 through 15 were in response to the
releases described in paragraph 21. The costs incurred in connection with said actions, as
alleged in paragraph 16, were necessary, reasonable and consistent with the Massachusetts
Contingency Plan.

23.     The MBTA, as described in paragraph 17, provided notice to the B&M of its
liability in accordance with the provisions set forth in Section 4A(a) of Chapter 21E. In
accordance with Section 4A of Chapter 21E, as described in paragraph 19, the MBTA has
conferred in good faith with the B&M in an effort to resolve all disputes between them. The
B&M has refused to agree to provide reimbursement or an equitable share of the MBTA's cost
in responding to the contamination at the BET.

24.     By reason of the foregoing, pursuant to Section 4 of Chapter 21E, the B&M is
liable to the MBTA for its equitable share of the response costs incurred, and to be incurred, by
the MBTA.

25.     Because substantially all or the great preponderance of the oil contamination at
the Site resulted from releases during the time in which the B&M operated the Terminal, the
B&M's equitable share of responsibility is not less than 95 percent.

## Second Counterclaim –
## Declaratory Judgment

26.     The MBTA repeats, realleges, and incorporates as if fully set forth herein the

allegations in paragraphs 1 through 25 hereof.

27.     This is a claim under 28 U.S.C. §2201 for a declaration of the future rights of h

MBTA and obligations of the B&M under Section 4 of Chapter 21E.

28.     There is an actual and existing controversy between the parties involving their

respective rights, duties, and legal relations arising from the contamination of the Terminal.

29.     The MBTA is entitled to a judgment declaring its rights to payment from the

B&M for damages, costs, and expenses to be incurred by the MBTA in the future in respondin

to the contamination at the Terminal as a result of the B&M's liability to the MBTA under

Section 4 of Chapter 21E.


## ANSWER

For its answer to the Complaint, the MBTA states as follows:


## First Defense

30.     This Court lacks subject matter jurisdiction over this action because it does not

arise under Title 11 of the United States Code or other laws or the Constitution of the United

States because, in substance, the action is a state law claim by the MBTA to which the B&M

asserts the affirmative defense of discharge in bankruptcy.

## Second Defense

As to the specific allegations of the numbered paragraphs of the complaint, the MBTA states as follows:

31.     As to the allegations of paragraph 1, admits the allegations that a copy of the Consummation Order is annexed to the complaint as Exhibit A and states that the remaining allegations are conclusions of law and, accordingly, do not require a response, and to the extent a response is required, denies each and every other allegation in said paragraph.

32.     As to the allegations of paragraph 2, admits the allegations that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and that the B&M's bankruptcy case was filed in this district, and states that the remaining allegations are conclusions of law and, accordingly, do not require a response, and to the extent a response is required, denies each and every other allegation in said paragraph.

33.     Admits the allegations in paragraphs 3 and 4.

34.     States that the allegations in paragraph 5 are conclusions of law and, accordingly do not require a response, and to the extent a response is required, denies said allegations.

35.     States that the allegations in paragraph 6 are conclusions of law or characterizations of the action and, accordingly, do not require a response, and to the extent a response is required, denies said allegations.

36.     Admits the allegations in paragraphs 7 through 10.

37.     Denies the allegations in paragraph 11.

38.     As to the allegations of paragraph 12, admits the allegation that this Court presided over the bankruptcy proceedings and states that it is without knowledge or information sufficient to form a belief as to the truth of each and every other allegation in said paragraph.

39.     Admits the allegations in paragraphs 13 and 14.

40.     As to the allegations of paragraph 15, admits the allegation that March 24, 1983

is prior to the date of the Consummation Order and states the allegation as to when the

Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 2  3

("Chapter 21E") became law is a conclusion of law rather than a statement of fact and,

accordingly, requires no answer and denies each and every other allegation in said paragraph

41.     Denies the allegations in paragraph 16.

42.     Admits the allegations in paragraphs 17 and 18.

43.     As to the allegations in paragraph 19 through 21, states that the Consummation

Order speaks for itself, and to the extent that the B&M characterizes the contents of the

Consummation Order, that characterization is denied.

44.     Denies the allegations in paragraphs 22 and 23.

45.     As to the allegations in paragraph 24, repeats and reasserts the admissions,

statements and denials in paragraphs 31 through 44 hereof, inclusive, as if the same were set

forth herein in their entirety.

46.     As to the allegations of paragraph 25, states that the Bankruptcy Act of 1898

(repealed 1978) (the "Bankruptcy Act") speaks for itself, and to the extent that the B&M

characterizes the contents of the Bankruptcy Act, that characterization is denied.

47.     As to the allegations of paragraph 26, states that the Consummation Order speak

for itself, and to the extent that the B&M characterizes the contents of the Consummation Orce

that characterization is denied.

48.     Denies the allegations of paragraphs 27 through 29.

49.     As to the allegations in paragraph 30, repeats and reasserts the admissions, statements and denials in paragraphs 31 through 48 hereof, inclusive, as if the same were set forth herein in their entirety.

50.     As to the allegations in paragraphs 31 and 32, states that the Consummation O x r speaks for itself, and to the extent that the B&M characterizes the contents of the Consummati Order, that characterization is denied.

51.     Denies the allegations in paragraph 33.

52.     As to the allegations in paragraph 34, repeats and reasserts the admissions, statements and denials in paragraphs 31 through 51 hereof, inclusive, as if the same were set forth herein in their entirety.

53.     Denies the allegations in paragraphs 35 and 36.

54.     As to the allegations in paragraph 37, repeats and reasserts the admissions, statements and denials in paragraphs 31 through 53 hereof, inclusive, as if the same were set forth herein in their entirety.

55.     As to the allegations in paragraph 38, admits the allegations that in May 2004, tl MBTA transmitted a Demand Letter to the B&M seeking to recover the MBTA's investigatic n and remediation costs for the BET and denies each and every other allegation in said paragraph

56.     Denies the allegations in paragraphs 39 and 40.

57.     States that it is without knowledge or information sufficient to form a belief as t the truth of the allegations in paragraph 41.

58.     Denies the allegations in paragraphs 42 and 43.

## Third Defense

59. The complaint's cause of action for laches is deficient because the MBTA's cl₁ ₁

against the B&M is an action at law, brought pursuant to Chapter 21E.

**WHEREFORE**, the MBTA prays that the Court enter judgment as follows:

1. Dismissing the complaint;

2. Awarding damages to the MBTA on its first counterclaim in the amount not less than $14,618,419.50, plus interest;

3. Entering judgment for the MBTA on its second counterclaim declaring the MBTA's right to payment from the B&M for damages, costs and expenses to be incurred by the MBTA in the future in responding to the contamination at the Terminal;

4. Granting the MBTA its costs, including reasonable attorneys' fees, incurred in connection with the action; and

5.      Granting it such other and further relief as may be just and

proper.

By its attorneys,

John M. Stevens (BBO No. 480140)
Alicia Barton McDevitt (BBO No. 65515.4
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts   02210-2600
(617) 832-1000

Dated:          September 30, 2005

## Certificate of Service

I hereby certify that a true copy of the above document was served upon the attorneys o
record for the Boston and Maine Corporation, at the addresses listed below, by mail on
September 30, 2005:

Robert B. Culliford
Katherine E. Potter
Iron Horse Park
North Billerica, MA  01862
978-663-1215

Eric L. Hirschhorn
Susan A. MacIntyre
Winston & Strawn LLP
1700 K. Street, N.W.
Washington, D.C.  20006
202-282-5000

Terry John Malik
Winston & Strawn LL₱
35 West Wacker Drive
Chicago, IL  60601
312-558-5600

Alicia Barton McDevitt (BBO No. 655184