UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                          .
BOSTON AND MAINE CORPORATION,             .
                                          .
            Plaintiff,                    .
                                          .
       v.                                 .    CIVIL ACTION No. 05-11656-RCL
                                          .
MASSACHUSETTS BAY                         .
TRANSPORTATION AUTHORITY,                 .
                                          .
            Defendant.                    .
                                          .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
```

**CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF DEFENDANT MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant Massachusetts Bay Transportation Authority ("MBTA"), by and through its undersigned counsel, hereby makes the following statement of undisputed material facts:

1. The property that is the subject of this lawsuit is a 34-acre parcel of property in Boston, Somerville and Cambridge, Massachusetts typically referred to as the Boston Engine Terminal (the "Terminal" or the "Site"). (Affidavit of Alicia B. McDevitt In Support of MBTA's Motion for Partial Summary Judgment, hereinafter "McDevitt Aff.", Exh. 1, Phase II Comprehensive Site Assessment, without attachments, at 2).

2. The Terminal has been used as an active railroad maintenance facility and rail yard since the late 1800s. (McDevitt Aff., Exh. 2, Complaint for Enforcement of Bankruptcy Order at 2).

3. Plaintiff Boston and Maine Corporation ("B&M") owned and operated the Site

B3205961.2

from approximately 1926 through December 1976. (McDevitt Aff., Exh. 2, Complaint for Enforcement of Bankruptcy Order at 2).

4. Beginning in or about the 1940's the B&M began to switch from steam-powered locomotives to diesel-powered locomotives. (McDevitt Aff., Exh. 3, A Brief Background of Boston Engine Terminal Oil Pollution Problems at 2).

5. As a result of the change to diesel-powered trains "more and more oil was spilled onto the ground during fueling and maintenance operations." (McDevitt Aff., Exh. 3, A Brief Background of Boston Engine Terminal Oil Pollution Problems at 2).

6. Witnesses who worked at the Terminal during the period of B&M's operations testified that oil was spilled frequently during fueling and maintenance operations and that employees of the B&M were solely responsible for these operations. (McDevitt Aff., Exh. 4, Deposition of James Henneman at 30:24-33:17 and 51:5-52:16); (McDevitt Aff., Exh. 5, Deposition of Roger Bergeron at 117:10-119:22 and 121:1-19); (McDevitt Aff., Exh. 6, Deposition of Richard House at 28:18-29:17).

7. The B&M operated under Bankruptcy Court protection from 1970 to 1983 under the Bankruptcy Act of 1898, as amended (the "Act"), in proceedings styled *In the Matter of Boston and Maine Corporation, Debtor*, Bankr. No. 70-250-M (1970). (McDevitt Aff., Exh. 2, Complaint for Enforcement of Bankruptcy Order at ¶12).

8. In the course of the bankruptcy, the MBTA purchased the Terminal and other properties used by the B&M to provide commuter rail service in the Boston area in December 1976. (McDevitt Aff., Exh. 2, Complaint for Enforcement of Bankruptcy Order at ¶13). After the sale, B&M continued to operate the Terminal from 1976 through December 31, 1986. (McDevitt Aff., Exh. 2, Complaint for Enforcement of Bankruptcy Order at ¶14).

9. The B&M operated the Terminal on behalf of the MBTA pursuant to two consecutive Operating Agreements between the parties dated March 26, 1976 and February 23, 1982. (McDevitt Aff., Exh. 7, 1976 Operating Agreement); (McDevitt Aff., Exh. 8, 1982 Operating Agreement). The Operating Agreements made no reference to environmental contamination or claims.

10. Under the terms of the Operating Agreements, B&M operated the Terminal for the MBTA, with B&M employees, as an independent contractor. (McDevitt Aff., Exh. 7, 1976 Operating Agreement at ¶1.1); (McDevitt Aff., Exh. 8, 1982 Operating Agreement at ¶ 5.01).

11. Under the terms of the Operating Agreements, B&M employees engaged in operating the Terminal were subject to the direction, supervision and control of solely B&M, and not the MBTA. (McDevitt Aff., Exh. 7, 1976 Operating Agreement at ¶1.3); (McDevitt Aff., Exh. 8, 1982 Operating Agreement at ¶ 5.01).

12. During the period in which the B&M operated the Site for the MBTA, the MBTA had only a single employee who worked the Terminal on a full-time basis, Richard House. (McDevitt Aff., Exh. 6, Deposition of Richard House at 10:10-17).

13. Mr. House was a mechanical officer for the MBTA and his job responsibilities included procuring and inspecting new equipment-- he was not in a managerial position. (McDevitt Aff., Exh. 6, Deposition of Richard House at 4:19-5:18).

14. One witness, who worked for the B&M at the Terminal and the adjacent Yard 7 for approximately a two and a half to three-year period during the MBTA's ownership, was not even aware that the Terminal was owned by the MBTA, and believed instead that it was owned by the B&M. (McDevitt Aff., Exh. 9, Deposition of David Dunn, at 18:19-22 and 21:19-22:5).

15. On June 17, 1983, the Court (U.S.D.J. Murray) issued a Consummation Order

confirming the B&M's plan of reorganization and enjoining claims of creditors arising on or before June 30, 1983; the B&M emerged from bankruptcy protection as a reorganized entity under the terms of the Consummation Order on that date. (McDevitt Aff., Exh. 2, Complaint for Enforcement of Bankruptcy Order at ¶¶18-20 and Exhibit 1).

16. The B&M had not scheduled any liability or potential liability to the MBTA in contribution or indemnity under M.G.L.c. 21E ("Chapter 21E") for contamination of the Terminal, nor did the MBTA file a proof of claim for such contribution or indemnity. (McDevitt Aff., Exh. 2, Complaint for Enforcement of Bankruptcy Order at ¶17).

17. Releases of oil by the B&M at the Terminal continued to occur after June 30, 1983. (McDevitt Aff., Exh. 1, Phase II Comprehensive Site Assessment, without attachments, at 16); (McDevitt Aff., Exh. 3, A Brief Background of Boston Engine Terminal Oil Pollution Problems at 2).

18. By 1986, a consultant for the B&M's parent corporation, Guilford Transportation Industries, Inc., Lawrence B. Boyd, described the oil use at the Terminal by stating that, "at the [Terminal], there are certain places where oil spillage is constant and often excessive." (McDevitt Aff., Exh. 3, A Brief Background of Boston Engine Terminal Oil Pollution Problems at 2). This report contains no reference to Chapter 21E. Id.

19. In July 1984 consultants acting on behalf of the MBTA undertook and Oil Recovery Study at the Terminal to assess the economic feasibility of recovering separate-phase, or floating, petroleum product from the soils on the Site, as had sometimes been done with oil from a separator at the Site. (McDevitt Aff., Exh. 1, Phase II Comprehensive Site Assessment, without attachments, at 8); (McDevitt Aff., Exh. 5, Deposition of Roger Bergeron at 51:1-22).

20. The 1984 Oil Recovery Study concluded that recovered oil could not be reused as

a diesel fuel and contained a recommendation to notify the Massachusetts Department of Environmental Quality and Engineering ("DEQE"), the predecessor agency to the Massachusetts Department of Environmental Protection ("DEP"), of conditions at the Site. (McDevitt Aff., Exh. 1, Phase II Comprehensive Site Assessment, without attachments, at 8).

21. In April 1989, the DEP issued a Notice of Responsibility to AMTRAK, who took over operations of the Terminal on January 1, 1987 after the B&M's contract with the MBTA ended, for an oil spill that occurred at the Site in November, 1988. (McDevitt Aff., Exh. 10, Letter from R. Bradley and R. Chalpin (DEQE) to H. Knott (Amtrak) dated April 10, 1989).

22. There is no evidence suggesting that the DEP was aware of the contamination problems at the Site prior to 1988; the DEP itself has confirmed that there is no evidence suggesting that it had contacted the MBTA concerning environmental conditions at the Terminal prior to 1988. (McDevitt Aff., Exh. 11, Affidavit of Adeline Delbene, Keeper of the Records for DEP, at ¶4).

23. According to the MBTA's records, the first notices of responsibility that the MBTA received from the DEP in connection with potential liability under Chapter 21E for any site in Massachusetts were issued in 1986. (McDevitt Aff., Exh. 12, MBTA's Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories at 9-10).

24. The MBTA did not have an internal department responsible for handling environmental matters until 1990. (McDevitt Aff., Exh. 13, Affidavit of Jane A. Chmielinski at ¶4); (McDevitt Aff., Exh. 14, Affidavit of Michael A. Diggin at ¶4).

25. The only MBTA employees with responsibilities relating to environmental issues prior to 1990 were Jane Chmielinski and Michael Diggin, neither of whom was aware of the MBTA's potential liability for the oil contamination at the Terminal until after DEP became

involved with the Site in 1989. (McDevitt Aff., Exh.13, Affidavit of Jane A. Chmielinski at ¶¶4-6); (McDevitt Aff., Exh. 14, Affidavit of Michael A. Diggin at ¶¶4-6).

26.  Neither Ms. Chmielinski nor Mr. Diggin is aware of any information suggesting that anyone at the MBTA was aware of the MBTA's potential liability for cleanup of the Terminal prior to the late 1980's. (McDevitt Aff., Exh.13, Affidavit of Jane A. Chmielinski at ¶7); (McDevitt Aff., Exh. 14, Affidavit of Michael A. Diggin at ¶7).

27.  On July 31, 1989, DEP sent AMTRAK a letter indicating that no further emergency measures related to the November, 1988 spill were required, but that the DEP had concerns as to the "long term environmental/public impact of the contaminant conditions at the site", and further investigative and/or remedial response measures were required. (McDevitt Aff., Exh. 15, Letter from R. Bradley and R. Chalpin (DEQE) to P. McKenna (Amtrak) dated July 31, 1989).

28.  As owner of the Site, the MBTA submitted a Preliminary Site Assessment and Phase I Limited Site investigation to the DEP in November, 1989. (McDevitt Aff., Exh. 16, Phase I Limited Site Assessment, without attachments).

29.  That study and subsequent investigations undertaken by the MBTA identified extensive contamination of the Site, and the MBTA was ultimately required to undertake significant remedial actions to address the oil present in the soil and groundwater at the Site. (McDevitt Aff., Exh. 16, Phase I Limited Site Assessment, without attachments); (McDevitt Aff., Exh. 17, Phase V Completion Report and Class C Response Action Outcome Statement, without attachments, at 2 and 7-8).

30.  The primary contaminant driving remediation of the Site was oil. (McDevitt Aff., Exh. 17, Phase V Completion Report and Class C Response Action Outcome Statement, without

attachments, at 5).

31.     On May 4, 2004, as remediation of the Terminal was drawing to a close, the MBTA's attorneys sent a demand letter to the B&M pursuant to Section 4A of Chapter 21E, seeking contribution and reimbursement for the B&M's equitable share of the costs of cleaning up the oil contamination at the Terminal. (McDevitt Aff., Exh. 18, May 4, 2004 letter from J. Stevens to R. Culliford).

32.     The B&M responded to the MBTA's demand letter on June 18, 2004, and in its response raised the defense that the B&M's liability to the MBTA for contamination of the Terminal had been discharged in the course of the B&M's bankruptcy proceedings. (McDevitt Aff., Exh. 19, June 18, 2004 letter from R. Culliford to J. Stevens, without attachments).

33.     On August 10, 2005, the B&M filed a Complaint for Enforcement of Bankruptcy Consummation Order, Injunctive Relief and Contempt initiating the present lawsuit. (McDevitt Aff., Exh. 2, Complaint for Enforcement of Bankruptcy Order).

Respectfully submitted,

/s/ John M. Stevens
John M. Stevens (BBO #480140)
Alicia Barton McDevitt (BBO #655184)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
amcdevitt@foleyhoag.com
Attorneys for Defendant
 Massachusetts Bay
 Transportation Authority

Dated: June 2, 2006