# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————— x

BOSTON AND MAINE
CORPORATION,

                 Plaintiff,

           -v.-                           Civil Action No. 05-11656-RCL

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY

                 Defendant.

———————————————————— x

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
### AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

The Plaintiff, Boston & Maine Corporation, ("B&M") hereby submits its Statement of Material Facts as to Which There is No Genuine Issue to be Tried , as follows:

1.       B&M is a rail common carrier providing railroad freight services in the Northeastern United States. Declaration of Roger Bergeron in Support of Motion for Partial Summary Judgment ("Bergeron Declaration") ¶ 4.

2.       Defendant Massachusetts Bay Transportation Authority ("MBTA") is a body politic and corporate and a political subdivision of the Commonwealth of Massachusetts. Answer and Counterclaims of Defendant Massachusetts Bay Transportation Authority ("Answer") ¶ 2 (Attached as Exhibit 1 to Memorandum in Support of Motion for Partial Summary Judgment). MBTA provides mass transportation service throughout eastern Massachusetts by means of bus, subway, light rail, and otherwise. Bergeron Declaration ¶ 5.

MBTA is the second largest property owner in Massachusetts.  Bergeron Declaration ¶ 6 & Exhibit ("Exh.") 1.

3.     B&M filed for bankruptcy in 1970, and operated under Bankruptcy Court protection from 1970 to June 1983.  Bergeron Declaration ¶ 23.

4.     This Court presided over the bankruptcy proceedings, which were held pursuant to the Bankruptcy Act of 1898 (subsequently repealed).  Bergeron Declaration ¶ 24.

5.     During B&M's Bankruptcy proceedings, with approval of the Court, MBTA purchased the Boston Engine Terminal ("BET") from B&M's bankruptcy estate in December 1976. Bergeron Declaration ¶ 25.

6.     The purchase and sale agreement provided MBTA with the ability to inspect the BET property.  Bergeron Declaration ¶ 27 & Exh. 10.

7.     During the bankruptcy proceedings, MBTA entered into agreements with B&M's bankruptcy trustees regarding B&M's operation of the BET.  Bergeron Declaration ¶ 28 & Exh. 11.

8.     The 1982 Agreement between MBTA and B&M's bankruptcy trustees provided that MBTA would indemnify B&M for certain "Accident Liability," including property damage at the BET, if causes of action accrued during the term of the Agreement.  Bergeron Declaration ¶¶ 29-30 & Exhs. 12-13.

9.     The BET, which occupies approximately 34 acres in Somerville, Boston, and Cambridge, Massachusetts and which is now know as the MBTA Commuter Rail Maintenance Facility, has been used as an active railroad maintenance facility and rail yard since the late 1800's.  Answer ¶¶ 4 & 5.  Daily activities at the BET included fueling, maintenance and

washing of large quantities of rail cars. Declaration of James Hennemann in Support of Motion for Partial Summary Judgment ("Hennemann Declaration") ¶ 4.

10.    B&M owned and operated the BET from 1929 until December 1976, when the BET was purchased by MBTA. Answer ¶ 6.

11.    Although MBTA owned the BET beginning in December 1976, B&M continued to operate the site until December 31, 1986. Bergeron Declaration ¶ 26.

12.    MBTA maintained an office at the BET and had personnel on site who exchanged information on environmental conditions at the BET with their MBTA supervisors. Hennemann Declaration ¶ 19 & Exhs. 1-3, 5-7, 31-34, 36.

13.    MBTA also had payment responsibility for expenses at the BET site, including environmental expenses. Hennemann Declaration ¶ 28 & Exh. 35.

14.    Frequent spills of fuel oil occurred at the BET prior to June 1983. Hennemann Declaration ¶ 5.

15.    Prior to June 1983, MBTA employees were aware that releases of fuel oil occurred at the BET. Hennemann Declaration ¶ 6 & Exhs. 1-8.

16.    On several occasions in the 1970's and early 1980's, oil was released from the BET into the Miller's River and/or the Charles River. Bergeron Declaration ¶ 7 & Exhs. 2-4.

17.    MBTA was aware of the releases and was aware the Coast Guard was issuing warnings and fines. Bergeron Declaration ¶¶ 10-11 & Exh. 7.

18.    Prior to June 1983, Massachusetts state authorities were aware of releases of oil at and from the BET. Bergeron Declaration ¶¶ 8-9, 13-14 & Exhs. 2-6.

19.     Prior to June 30, 1983, MBTA had a duty under the law of Massachusetts to abate a nuisance on property MBTA owned, which included the cleanup of environmental hazards. *Nassr v. Commonwealth*, 394 Mass. 767, 773-75 (1985).

20.     On March 24, 1983, the Commonwealth of Massachusetts enacted M.G.L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention and Response Act ("Chapter 21E"). M.G.L. ch. 21E (Attached as Exhibit 2 to Memorandum in Support of Motion for Partial Summary Judgment).

21.     MBTA was aware or should have been aware of the consideration and enactment of Chapter 21E. Culliford Declaration ¶ 11 & Exhs. 2-3.

22.     Chapter 21E provides for strict, joint and several liability for owners or operators of contaminated property and requires the cleanup of property at which oil and/or hazardous substances have been released. Chapter 21E § 5.

23.     On June 17, 1983, this Court entered the Consummation Order in the B&M bankruptcy ("Consummation Order") (attached as Exhibit 4 to Memorandum in Support of Motion for Partial Summary Judgment).

24.     The Consummation Order provided that as of the Consummation Date, B&M and its bankruptcy trustees would be discharged and released from all existing claims and liabilities, whether or not filed in the bankruptcy. Consummation Order § 5.03(a).

25.     The Consummation Order also enjoined the assertion of claims against B&M existing on or before the Consummation Date. Consummation Order § 8.01.

26.     The Consummation Order provided that the Consummation Date was June 30, 1983. Consummation Order § 2.01.

27.     MBTA did not file a claim in the B&M bankruptcy. Answer ¶ 42.

28.     On May 4, 2004, MBTA made a demand of B&M under Chapter 21E for reimbursement of environmental cleanup costs with respect to contamination at the BET. Answer ¶ 1.

Respectfully submitted,

WINSTON & STRAWN LLP

By: _Eric L. Hirschhorn_
Eric L. Hirschhorn
Winston & Strawn LLP
1700 K Street, N.W.
Washington DC  20006
202-282-5000
Attorneys for Plaintiff,
Boston & Maine Corporation

Robert B. Culliford (BBO#638468)
14 Aviation Avenue
Pease International Tradeport
Portsmouth NH  03801
603-766-2002
Counsel for Plaintiff,
Boston & Maine Corporation

Dated:  June 2, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 2, 2006.

John M. Stevens
Alicia Barton McDevitt
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA  02210-2600
(617) 832-1000

Eric L. Hirschhorn

6