UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

BOSTON AND MAINE CORPORATION,

        Plaintiff,

    -v.-                          Civil Action No. 05-11656-RCL

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

        Defendant.

---

**PLAINTIFF BOSTON & MAINE CORPORATION'S OPPOSITION TO DEFENDANT MASSACHUSETTS BAY TRANSPORTATION AUTHORITY'S CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff Boston and Maine Corporation ("B&M"), pursuant to Local Rule 56.1 of the United State District Court for the District of Massachusetts, hereby submits the following response to defendant Massachusetts Bay Transportation Authority's ("MBTA") Concise Statement of Undisputed Material Facts in Support of Defendant's Motion for Partial Summary Judgment ("Statement of Facts").

    1.    B&M does not dispute the facts alleged in Paragraph 1 of MBTA's Statement of Facts.

    2.    B&M does not dispute the facts alleged in Paragraph 2 of MBTA's Statement of Facts.

3. B&M does not dispute the facts alleged in Paragraph 3 of MBTA's Statement of Facts.

4. B&M does not dispute the facts alleged in Paragraph 4 of MBTA's Statement of Facts.

5. B&M does not dispute the facts alleged in Paragraph 5 of MBTA's Statement of Facts.

6. B&M does not dispute the facts alleged in Paragraph 6 of MBTA's Statement of Facts.

7. B&M does not dispute the facts alleged in Paragraph 7 of MBTA's Statement of Facts.

8. B&M does not dispute the facts alleged in Paragraph 8 of MBTA's Statement of Facts.

9. B&M disputes the facts alleged in Paragraph 9 of MBTA's Statement of Facts. As to the operating agreements for the Boston Engine Terminal ("BET") characterized in Paragraph 9, B&M disputes MBTA's assertion that "[t]he Operating Agreements made no reference to environmental contamination or claims." B&M's bankruptcy trustees entered into several agreements with MBTA for the operation of the BET during the 1970's and 1980's. Declaration of Roger Bergeron in Opposition to MBTA's Motion for Partial Summary Judgment ("Bergeron Decl.") ¶ 28-29 & Exhs. 11-12. The Purchase and Sale Agreement gave MBTA the right to inspect property conditions and referenced environmental assessments, Bergeron Decl. ¶ 27 & Exh. 10, and the 1982 Operating Agreement specifically addressed liability for property damage at the BET. Bergeron Decl. ¶ 30-31 & Exhs. 13-14; see *Hays v. Mobil Oil Corp.*, 930 F.2d 96, 101-02 (1st Cir.

1991) ("property damage" includes environmental clean up costs); *Hazen Paper Co. v. U.S. Fidelity & Guar. Co.,* 555 N.E.2d 576, 582-84 (Mass. 1990) (same).

10.   B&M does not dispute the facts alleged in Paragraph 10 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. MBTA had liability for environmental cleanup as the owner of the BET, M.G.L. ch. 21E; s*ee also Nassr v. Commonwealth,* 394 Mass. 767, 773-75 (1985), and could have instituted an action against B&M based on its portion of liability for cleanup costs, *see also* M.G.L. ch. 231B (Uniform Contribution Among Tortfeasors Act (1962)) (stating where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them*); Hayon v. Coca Cola Bottling Co.,* 375 Mass. 644, 648-49 (1978) (indicating that under Chapter 231B term "liable in tort," is "broad in scope and is not suitable language for implying a narrow or restricted range of application within the framework of potential tort defendants"); *Alholm v. Town of Wareham et al.,* 371 Mass. 621, 626 at n. 3 (1976) (noting potential liability resulting from maintenance of public nuisance subject to well established tort principles regarding when action in public nuisance will lie); *Pritchard v. Mabrey,* 358 Mass. 137, 143-44 (1970) (discussing action in tort for maintenance of public nuisance); RESTATEMENT (SECOND) OF TORTS § 822 cmt. a (1979) (stating public and private nuisance constitute fields of tort liability).

11.   B&M does not dispute the facts alleged in Paragraph 11 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. MBTA had liability for

environmental cleanup as the owner of the BET. M.G.L. ch. 21E; see also *Nassr*, 394 Mass. at 773-75.

12.     B&M disputes the facts alleged in Paragraph 12 of MBTA's Statement of Facts. Specifically, B&M disputes MBTA's statement that "[d]uring the period in which the B&M operated the Site for the MBTA, the MBTA had only a single employee who worked at the Terminal on a full-time basis, Richard House." MBTA maintained an office at the BET site and MBTA employee Peter Wilson also indicated that he could be at the site up to five days a week in the 1979 to 1983 time period in addition to Richard House. Declaration of James Hennemann in Opposition to MBTA's Motion for Partial Summary Judgment ("Hennemann Decl.") ¶ 19 & Exh. 31.

13.     B&M does not dispute the facts alleged in Paragraph 13 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. Mr. House was an MBTA employee who had knowledge of the environmental condition of the BET and of releases of oil at the BET, and his knowledge is imputed to MBTA. Hennemann Decl. ¶¶ 9, 11, 12, 18, 19, 20, 21, 22, 23, 30 & Exhs. 1-3, 5-7, 14-15, 19-23, 31-34, 36, 38-41). The same is true for Mr. Wilson, who testified that he learned from his supervisors at MBTA about spills of hazardous materials at the BET. Hennemann Decl. ¶ 25 & Exhs. 2-3.

14.     B&M does not dispute the facts alleged in Paragraph 14 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. The evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983. *See, e.g.*, Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

15. B&M does not dispute the facts alleged in Paragraph 15 of MBTA's Statement of Facts.

16. B&M does not dispute the facts alleged in Paragraph 16 of MBTA's Statement of Facts.

17. B&M disputes the facts alleged in Paragraph 17 of MBTA's Statement of Facts. B&M disputes MBTA's assertion that "[r]eleases of oil by the B&M at the Terminal continued to occur after June 30, 1983." Neither document cited by MBTA (Phase II Comprehensive Site Assessment at 16 (attached as Exhibit 1 to Affidavit of Alicia B. McDevitt in Support of Defendant Massachusetts Bay Transportation Authority's Motion for Partial Summary Judgment) and A Brief Background of Boston Engine Terminal Oil Pollution Problems at 2 (attached as Exhibit 3 to Affidavit of Alicia B. McDevitt in Support of Defendant Massachusetts Bay Transportation Authority's Motion for Partial Summary Judgment)) indicates that B&M caused releases of oil at the BET after June 30, 1983. Moreover, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983.

18. B&M does not dispute the facts alleged in Paragraph 18 of MBTA's Statement of Facts. However, although the Boyd report does not mention Chapter 21E specifically, it evidences an awareness that releases of oil at the BET had been a concern. Declaration of Robert Culliford in Opposition to Defendant's Motion for Partial Summary Judgment ("Culliford Decl.") Exh. 2 at p. 2 (noting "the Boyd report which covers the time period including the late 1970's and early 1980's likely evidences information gathering during that time period in recognition of increased compliance requirements").

19.     B&M does not dispute the facts alleged in Paragraph 19 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. The evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983. *See, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

20.     B&M does not dispute the facts alleged in Paragraph 20 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. The evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983. *See, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

21.     B&M does not dispute the facts alleged in Paragraph 21 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. The evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983. *See, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

22.     B&M disputes the facts alleged in Paragraph 22 of MBTA's Statement of Facts. Specifically, B&M disputes MBTA's statement in Paragraph 22 that "[t]here is no evidence suggesting that DEP was aware of the contamination problems at the Site prior to 1988." The Massachusetts Department of Environmental Quality ("DEQE"), which later became the Massachusetts Department of Environmental Protection ("DEP"), kept incident files on releases at or from the BET during the early 1980's. Bergeron Decl. ¶ 13 & Exhs. 2-4. These included DEP incident response files on a fuel spill of approximately 1,100 gallons of No. 2 fuel oil at the BET in October 1981, and files on releases of oil

from the BET into the Millers River and the Charles River. Bergeron Decl. ¶ 14 & Exhs. 2-4.

DEP was recently able to locate several records in its possession that show DEP was aware, and addressed, contamination problems at the BET prior to 1988. *See* Declaration of Adeline DelBene ("DelBene Decl.") & Exhs. 1-7 thereto. In particular, DEP maintained records on the following releases at the BET prior to June 30, 1983:

1. December 14, 1980 spill of 15,000 gallons of No. 2 fuel oil from a pipeline in the B&M Bud Yard at the BET to the MDC Prison Point Pumping Station;

2. July 22, 1981 spill of No. 2 fuel oil (amount unknown) from B&M to Charles River; DEP indicates the case is closed;

3. October 11, 1981 spill of 1,100 gallons of No. 2 Fuel Oil at the B&M Yard 5 at the BET; DEP indicates the case is closed;

4. October 19, 1981 spill of 20 gallons of No. 6 Fuel Oil from the BET oil-water separator to the Millers River;

5. December 16, 1981 spill of 100 gallons of No. 2 Fuel Oil from the B&M Railroad to the Millers River; DEP indicates the case is closed;

6. March 8, 1982 spill of 20 gallons of No. 2 fuel oil from the B&M to the Mystic Junction; DEP indicates the case is closed.

Thus, in contrast to MBTA's alleged statement of fact, there is certainly evidence that DEP was aware of the contamination problems, and opened and monitored cases regarding such problems, at the BET prior to 1988.

B&M also disputes MBTA's statement in Paragraph 22 that "DEP itself has confirmed that there is no evidence suggesting that it had contacted the MBTA

7

concerning environmental conditions at the Terminal prior to 1988." This statement is derived from a previous March 8, 2006 Affidavit of Adeline Delbene, in which Ms. Delbene stated "MassDEP does not possess any documents in its files regarding the Boston Engine Terminal dated prior to 1988 [with the exception of one permit]." *See* Exh. 11 to Affidavit of Alicia B. McDevitt in Support of Defendant Massachusetts Bay Transportation Authority's Motion for Partial Summary Judgment. This statement later proved to be incorrect, since DEP, as of June 21, 2006, located additional documents in its files regarding the BET dated prior to 1988. Likewise, Ms. Delbene's statement that DEP does not possess any documents in its files indicating that DEP contacted MBTA regarding environmental conditions at the BET prior to 1988 is incorrect. DEP recently was able to locate evidence of a spill of polychlorinated biphenyl ("PCB") oil at the old power house at the BET in 1986 for which both B&M and MBTA are listed as responsible parties. *See* DelBene Decl. at Exh. 8. DEP was also able to locate a record of a spill of miscellaneous oil at the gravel yard across from the Boston Edison (likely the BET) in 1985 for which MBTA is listed as the property owner. *See* DelBene Decl. at Exh. 9. Thus, in Ms. Delbene's prior affidavit she was referring only to files associated with one DEP release tracking number (RTN 3-2534), and merely noted that as of March 8, 2006, DEP had not been able to locate any documents in those files indicating DEP contacted MBTA regarding environmental conditions at the BET prior to 1988. DEP does not, and cannot, verify that such documents never existed (since some have now been found), and additional documents may yet be located. *See* Declaration of John Collins in Opposition to Defendant's Motion for Partial Summary Judgment ("Collins Decl.") ¶ 7. Moreover, in addition to DEP's awareness of contamination at the BET in

the early 1980's, during that time or earlier, the United States Coast Guard was issuing fines and penalties for releases of oil from the BET to nearby rivers. Bergeron Decl. ¶¶ 7-9 & Exhs. 2-6. MBTA was aware that the Coast Guard was issuing warnings and fines for these discharges. Bergeron Decl. ¶¶ 10, 11 & Exh. 7.

23.  B&M does not dispute the facts alleged in Paragraph 23 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. Chapter 21E was enacted prior to June 30, 1983 and imposed immediate liability on MBTA as an owner of property where releases had occurred. Moreover, common law liability existed before the enactment of Chapter 21E. *Nassr*, 394 Mass. at 773-75.

24.  B&M does not dispute the facts alleged in Paragraph 24 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. MBTA had liability for environmental cleanup as the owner of the BET, M.G.L. ch. 21E; s*ee also Nassr,* 394 Mass. at 773-75, and the evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983, *see, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

25.  B&M does not dispute the facts alleged in Paragraph 25 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. MBTA had liability for environmental cleanup as the owner of the BET, M.G.L. ch. 21E; *see also Nassr,* 394 Mass. at 773-75, and the evidence shows that MBTA had actual knowledge of oil

contamination at the BET prior to June 30, 1983, *see, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

26.     B&M does not dispute the facts alleged in Paragraph 26 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. MBTA had liability for environmental cleanup as the owner of the BET, M.G.L. ch. 21E; *see also Nassr,* 394 Mass. at 773-75, and the evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983, *see, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

27.     B&M does not dispute the facts alleged in Paragraph 27 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. MBTA had liability for environmental cleanup as the owner of the BET, M.G.L. ch. 21E; *see also Nassr,* 394 Mass. at 773-75, and the evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983, *see, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

28.     B&M does not dispute the facts alleged in Paragraph 28 of MBTA's Statement of Facts. However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983. MBTA had liability for environmental cleanup as the owner of the BET, M.G.L. ch. 21E; *see also Nassr,* 394 Mass. at 773-75, and the evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983, *see, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

29.     B&M does not dispute the facts alleged in Paragraph 29 of MBTA's Statement of Facts.  However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983.  MBTA had liability for environmental cleanup as the owner of the BET, M.G.L. ch. 21E; s*ee also Nassr,* 394 Mass. at 773-75, and the evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983, *see, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

30.     B&M does not dispute the facts alleged in Paragraph 30 of MBTA's Statement of Facts.  However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983.  MBTA had liability for environmental cleanup as the owner of the BET, M.G.L. ch. 21E; s*ee also Nassr,* 394 Mass. at 773-75, and the evidence shows that MBTA had actual knowledge of oil contamination at the BET prior to June 30, 1983, *see, e.g.,* Hennemann Decl. ¶¶ 18, 19 & Exhs. 1-8, 10-12, 16-17, 19-24, 29-39.

31.     B&M does not dispute the facts alleged in Paragraph 31 of MBTA's Statement of Facts.  However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983.

32.     B&M does not dispute the facts alleged in Paragraph 32 of MBTA's Statement of Facts.  However, such facts are irrelevant to whether MBTA had a claim for environmental cleanup at the BET prior to June 30, 1983.

33.     B&M does not dispute the facts alleged in Paragraph 33 of MBTA's Statement of Facts.

Respectfully submitted,

WINSTON & STRAWN LLP


By:   /s/ Eric L. Hirschhorn
      Eric L. Hirschhorn
      Winston & Strawn LLP
      1700 K Street, N.W.
      Washington DC  20006
      202-282-5000
      Attorneys for Plaintiff,
      Boston & Maine Corporation


      Robert B. Culliford (BBO#638468)
      14 Aviation Avenue
      Pease International Tradeport
      Portsmouth NH  03801
      603-766-2002
      Counsel for Plaintiff,
      Boston & Maine Corporation

Dated:  June 23, 2006


### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 23, 2006.

John M. Stevens
Alicia Barton McDevitt
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA  02210-2600
(617) 832-1000

                                        /s/ Eric L. Hirschhorn
                                        Eric L. Hirschhorn