UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

..........................................
.
BOSTON AND MAINE CORPORATION,   .
.
        Plaintiff,   .
.
        v.   .   CIVIL ACTION No. 05-11656-RCL
.
MASSACHUSETTS BAY   .
TRANSPORTATION AUTHORITY,   .
.
        Defendant.   .
.
..........................................

**MEMORANDUM OF DEFENDANT MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY IN OPPOSITION TO
PLAINTIFF'S CORRECTED OBJECTIONS TO REPORT
AND RECOMMENDATION OF MAGISTRATE JUDGE**

Defendant Massachusetts Bay Transportation Authority (the "MBTA") submits this memorandum in opposition to the Corrected Objections of Plaintiff Boston and Maine Corporation (the "B&M") to the January 26, 2007 Report and Recommendation ("R&R") of Magistrate Judge Marianne B. Bowler granting the MBTA's motion for partial summary judgment and denying the B&M's cross-motion.[1]  In its objections, the B&M largely ignores the detailed and careful reasoning set forth in the sixty-one page R&R and instead merely repeats at great length virtually every point from its original moving papers.  Like the original moving papers, the objections rely largely on quotations from judicial opinions taken out of context, mischaracterize authority, ignore what courts actually decided and never acknowledge that the

---

[1] The B&M's Objections to the R&R were originally filed February 9, 2007, and its Corrected Objections were filed with leave of court on February 16, 2007.  Pursuant to Rules 72 and 6 of the Federal Rules of Civil Procedure, this opposition has been filed within 10 days of the MBTA's receipt of the Corrected Objections, excluding weekends and legal holidays.

result the B&M advocates is unprecedented. The original moving papers, as Magistrate Judge Bowler properly found, were unpersuasive; so are the B&M's objections.

The R&R correctly held that the MBTA's Chapter 21E claims for contribution are not barred by the B&M's June 30, 1983 bankruptcy discharge because neither the B&M's June 30, 1983, Consummation Order nor Section 77 of the Bankruptcy Act of 1898 bar claims, such as those at issue here, that were not in the parties' contemplation at the time of the discharge. In order for its Chapter 21E claims to have been discharged, prior to June 30, 1983, the MBTA would have had to have contemplated not only that contamination existed and required cleanup but also that environmental regulators would impose liability for cleanup costs on the MBTA rather than on the party that had caused the contamination -- the B&M. As the R&R properly concluded, the undisputed facts demonstrate that, prior to the discharge date, neither party contemplated the liability that ultimately was imposed on the MBTA. Accordingly, the Court should adopt the R&R in its entirety and enter an order dismissing those counts of the B&M's complaint that relate to the issue of discharge in bankruptcy.

**PROCEDURAL BACKGROUND**

The issue presented by the parties' cross-motions for summary judgment is whether the June 30, 1983 bankruptcy discharge of the B&M shields it from claims for reimbursement of environmental response costs that the MBTA did not, until years after 1983, realize it would have to incur to cleanup oil contamination at the Boston Engine Terminal (the "Terminal" or the "Site") caused by the B&M.[2] Following an abbreviated discovery period focused on the bankruptcy discharge issue, the parties submitted detailed motions, oppositions and reply briefs

---

[2] A full recitation of the facts giving rise to the parties' cross-motions are recited in extensive detail in the R&R at pages 4 through 20.

in support of their cross-motions for partial summary judgment and, on September 5, 2006, argued the matter before Magistrate Judge Bowler. (See Briefs at Dkt. #s 17, 22, 35, 38, 44, 45; Transcript at Dkt. #60). In a thorough and soundly reasoned sixty-one page decision, Magistrate Judge Bowler carefully applied the applicable statutory provisions and governing case law to the facts presented by the parties and concluded that the MBTA's cause of action against the B&M under M.G.L. c. 21E ("Chapter 21E") was not a claim within the meaning of Section 77(b) of the of the Bankruptcy Act of 1989, 11 U.S.C. § 205 (1976) ("Section 77") at the time of the B&M's June 30, 1983 bankruptcy Consummation Order and therefore was not discharged. (See R&R, Dkt. #58).

Rehashing its prior lengthy motion papers, the B&M now objects to the R&R, asserting *inter alia*, that the R&R applies the wrong standard for determining the time at which claims accrue for bankruptcy purposes and that, even under the standard adopted in the R&R, the MBTA's claims had in fact accrued. Because the B&M has failed to raise any new issue or argument sufficient to justify setting aside the Magistrate Judge's thorough and persuasive reasoning, the Court should overrule the Corrected Objections in their entirety.

## ARGUMENT

**I.    The R&R Correctly Concluded That Section 77 Of The Bankruptcy Act Of 1898 And Chapter 21E Each Require That Claims Be Contemplated Before They Can Be Discharged.**

Relying on a close and careful reading of the applicable statutes and case law, the R&R concluded that under either Section 77's own definition of "claims" (see, e.g., R&R at 32-46) or the "fair contemplation test" adopted by the vast majority of courts who have considered the issue, including in the Massachusetts Supreme Judicial Court in Reynolds Bros., Inc. v. Texaco, Inc., 647 N.E.2d 1205 (Mass. 1995) ("*Reynolds Bros.*") (see, e.g., R&R at 46-49), the only type

of claims that could have been discharged by the June 30, 1983 Consummation Order are those which were contemplated by the parties at the time of discharge. This result is mandated because, in enacting Section 77, "Congress did not intend to cut off future creditors' environmental claims where the creditors neither knew nor had a reason to know of their claims." R&R at 45, citing, inter alia, In re Jensen, 995 F.2d 925, 930 (9th Cir. 1993) ("*In re Jensen*") (nothing suggests congressional intent to discharge creditor's rights before "creditor knew or should have known that its rights existed"). Although the B&M stubbornly refuses to recognize reality, the fair contemplation test is both the standard applicable to cases arising under Massachusetts' Chapter 21E and the majority rule in federal cases addressing analogous claims. See, e.g., R&R at 48; Reynolds Bros., 647 N.E.2d at 1208 (Mass. 1995); In re Jensen, 995 F.2d at 930-31; AM Int'l, Inc. v. Datacard Corp., 106 F.3d 1342, 1348 (7th Cir. 1997) ("*AM Int'l*"); Signature Combs, Inc. v. U.S., 253 F. Supp. 2d 1028, 1038 (W.D.Tenn. 2003). It would therefore have been error had the R&R not adopted this standard.

As the R&R recognized, determination of whether a claim arises in bankruptcy begins with an analysis of interests created by the non-bankruptcy substantive law applicable to the underlying claim. R&R at 22. In this regard, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." Ohio v. Kovacs, 469 U.S. 274, 286 (1985). In particular, to determine whether a claim exists, courts "look to the substantive area of law governing the underlying claim." In the Matter of Reading Co., 115 F.3d 1111, 1123 (3rd Cir. 1997). Here, the non-bankruptcy substantive law at issue is Chapter 21E of the Massachusetts General Laws, and the Massachusetts Supreme Judicial Court resolved the issue as to when a claim arises under that statute in Reynolds Bros. There, the Court concluded, "We prefer the fair contemplation-foreseeability approach as the means to determine when a cause of

action under [Chapter 21E] becomes a claim for purposes of the Bankruptcy Code." 647 N.E.2d at 1208. After considering at least three different standards for determining when environmental liability arising from the debtor's pre-discharge conduct becomes a claim for bankruptcy purposes, the Reynolds Bros. court determined unequivocally that the intermediate standard of fair contemplation (or foreseeability) is the proper test for claims, such as those at issue here, arising under Chapter 21E. Id. at 1207. In its Corrected Objections, the B&M puts forward no reason why the Court should -- or may -- disregard a controlling determination of Massachusetts law.

Even if state law did not govern, there would be no sound basis for the B&M's objection to the R&R's rejection of the competing "relationship test" in favor of the fair contemplation approach. In that regard, the B&M steadfastly continues its misguided reliance on the Second Circuit's decision in In re Chateaugay Corp., 944 F.2d 997 (2d Cir. 1991) ("*In re Chateaugay*"). As the R&R points out at footnote 24, In re Chateaugay was decided under Bankruptcy Reform Act of 1978, 11 U.S.C. §101 et. seq., which contains a broader definition of "claims" than Section 77 of the Bankruptcy Act of 1898, and is not therefore directly on point. R&R at 34. More fundamentally, In re Chateaugay endorses an approach that has not been followed by the majority of federal courts who have reached the issue.[3] In fact, far from having gained wide acceptance as the B&M submits, the Second Circuit's decision in In re Chateaugay, has seldom been followed and often been criticized. See In re Jensen, 995 F.2d at 930-31 ("The 'relationship' approach, when defined as broadly as in In re Chateaugay, undermines the

---

[3] See, e.g., R&R at 48; Mesiti v. Microdot, 156 B.R. 113, 117 (D. N.H. 1993) (advocating for fair contemplation or foreseeability test); In re Jensen, 995 F.2d 925, 930-31(9th Cir. 1993)(applying fair contemplation standard); In the matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 974 F.2d 775 (7th Cir. 1992) (applying foreseeability standard); In the matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 3 F.3d 200 (7th Cir. 1993) (same); AM Int'l, Inc. v. Datacard Corp., 106 F.3d 1342, 1348 (7th Cir. 1997) (same); In re National Gypsum Co., 139 B.R. 397, 407-09 (N.D. Tex. 1992); In re Hexcel Corp., 239 B.R. 564, 570 (N.D. Cal. 1999); Sylvester Brothers Dev. Co. v. Burlington Northern R.R., 133 B.R. 648, 653 (D. Minn. 1991)(applying fair contemplation standard); Signature Combs, Inc. v. U.S., 253 F. Supp. 2d., 1028, 1038 (W.D.Tenn. 2003).

rationale for considering whether or not a relationship exists, namely that a creditor with a relationship may anticipate its potential claim"), quoting Discharging CERCLA Liability in Bankruptcy, 76 Minn. L. Rev. 327, 353 (1991) (internal quotations omitted).  Indeed, in the environmental context, it appears from the B&M's citations that application of the relationship test may be limited to the Second Circuit courts that are obliged to follow In Re Chateaugay.[4]

Although the Court of Appeals for the First Circuit has not yet reached the issue (as the B&M concedes[5]), decisions of other courts in the Circuit endorse the fair contemplation standard.  See In re CD Realty Partners, 205 B.R. 651, 656 (Bankr. D. Mass. 1997) (noting that in the context of statutory environmental claims, the test for determining when a claim arises "correctly" requires "a relationship of such degree that the claim could fairly have been contemplated by the parties pre-petition."); Mesiti v. Microdot, 156 B.R. 113, 117 (D. N.H. 1993) ("*Mesiti*") (in attempting to reconcile the competing policy objectives of CERCLA and the Bankruptcy Acts, "[t]he preferred means of doing so involves judicial application of a 'foreseeability' test when deciding whether post-bankruptcy CERCLA claims are discharged.").  The B&M offers no persuasive reason why the Court should adopt a view rejected by most Federal courts and criticized by commentators, and the R&R rightly declined to do so.[6]

---

[4]  Remarkably, the B&M continues to assert that the Bankruptcy Appellate Panel's decision in In re Jensen, 127 B.R. 27 (B.A.P. 9th Cir. 1991), adopting the relationship test, was affirmed by the Ninth Circuit in In re Jensen, 995 F.2d 925, 930-31(9th Cir. 1993).  The Ninth Circuit decision unequivocally adopted the fair contemplation approach (although it technically affirmed the Bankruptcy Appellate Panel by reaching the same result in applying a different standard).  The R&R expressly recognized that the Ninth Circuit is among those courts endorsing the fair contemplation approach at, e.g., 48.

[5]  Undeterred by the Magistrate Judge's admonition that B&M's reliance on In re Hemingway Transport, Inc., 993 F.2d 915 (1st Cir. 1993) "does not yield the result B&M seeks," B&M continues to cite the First Circuit's decision in that case as supporting the proposition that claims such as the MBTA's contribution claims "may arise as early as the creditor's purchase of the contaminated property," regardless of the creditor's knowledge of the potential claim.  R&R at 32, n. 20; Corrected Objections at, e.g., 6.  As indicated in the R&R, that decision simply recognized the existence of alternative approaches to fixing the time at which a claim for environmental response costs arises for bankruptcy purposes.

[6]  A recent decision of the United States Bankruptcy Court for the Eastern District of Tennessee, which the B&M

In disagreeing with the R&R, the B&M urges the Court to adopt a standard for determining when a claim has been discharged in bankruptcy that, in the view of almost all courts, grants too much deference to the interest a bankrupt has in a fresh start at the expense of society's interests in a speedy cleanup of environmental contamination and polluter accountability.  See e.g., Signature Combs 253 F. Supp. 2d. at 1038 (citing the fair contemplation test as "the only test which tries to accommodate both the fresh start goal of bankruptcy and the speedy cleanup and polluter accountability CERCLA goals."); In re Jensen, 995 F.2d at 930-31 (fair contemplation standard carefully balances the sometimes competing goals of environmental law and bankruptcy); In the matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 3 F.3d 200, 201 (7th Cir. 1993) ("*In re Chicago II*") (noting that in reconciling the competing goals of CERCLA and bankruptcy, "the tension between these fundamental aspects of our national policy is profound," and deciding to apply fair contemplation/foreseeability analysis as the preferable reconciliation of that tension).

After reviewing the overwhelming support for the fair contemplation approach in the relevant statutory history and case law, the R&R soundly concluded that Section 77's definition of a contingent claim depends entirely upon the a happening of a future event that was within the actual, presumed or fair contemplation of the parties at the time of discharge.  R&R at 46.  This result is mandated by both Section 77 and Chapter 21E and should be upheld.

---

cites, is totally inapposite.  See In re Cleveland, 349 B.R. 522 (Bankr. E.D. Tenn. 2006).  The case deals not with liability to a claimant arising from the debtor's responsibility for environmental contamination, but rather with a claim for payment of property taxes and homeowner's insurance premiums.  Although B&M cites the case as advocating for adoption of the relationship test, in fact, the court specifically acknowledged that, in cases involving environmental liability, most courts have adopted the fair contemplation test.  Id. at n. 7.

## II. The R&R Properly Found That The Undisputed Facts Demonstrate That Neither Party Contemplated The MBTA's Current Claims For Contribution Under Chapter 21E Until Long After June 30, 1983.

Magistrate Judge Bowler concluded in her R&R that, on the undisputed facts presented by the parties at summary judgment, it is evident that neither the MBTA nor the B&M contemplated the MBTA's eventual cleanup liability, let alone the MBTA's contribution claims against the B&M, until after the June 30, 1983 Consummation Order. Significantly, the B&M has not pointed to any error in the Magistrate's findings of fact or suggested that they are contradicted by the record.[7] Instead, the B&M persists in its narrow reading of the record and exclusive focus on the MBTA's knowledge of site conditions prior to the discharge in order to argue that knowledge by certain employees of the MBTA of oil spills by the B&M at the Site was equivalent to knowledge that the MBTA would be held liable for those spills and have to bring a contribution claim against the B&M. This premise is belied by the undisputed facts, including the B&M's own lack of recognition of regulatory consequences of such spills at the time, and was properly rejected in the R&R.

The most significant facts ignored by the B&M are those establishing the absence of any involvement by environmental regulators at the Site prior to the June 30, 1983 discharge date. For example, other than the United States Coast Guard (which had responded to oil spills not at the Site, but in the nearby Miller's River), no federal or state regulator had ever visited the site prior to June 30, 1983. R&R at 15. There is likewise no indication that Massachusetts' environmental regulators at Department of Environmental Protection's predecessor agency the Department of Environmental Quality Engineering ("DEQE") had opened any investigation of

---

[7] The B&M does at one point assert that the R&R's finding that the 1984 Groundwater Technology, Inc. report prepared at the request of the MBTA (Dkt. #18, ¶20; Dkt. 36, Exh. 1) was the first documentation of testing of soils at the Site (R&R at 16-17; 51-53) is undermined by "substantial contrary evidence in the record," but then fails to provide actual citation to any such evidence. Corrected Objections at 24.

soil or groundwater contamination at the Site prior to that time and no soil testing had even taken place. Id.; R&R at 52. In fact, the DEQE did not issue its first Chapter 21E notice of responsibility for the Site to any party until April 10, 1989. R&R at 18.

Perhaps even more telling is the absence of any evidence suggesting that the B&M itself recognized the import of Chapter 21E until years after its passage. Prior to June 30, 1983, the parties did not discuss Chapter 21E or environmental liability for soil contamination at the Terminal. R&R at 52. The undisputed evidence establishes that at "environmental" meetings held by the B&M at the Site prior to June 1983 discussion was limited to topics such as upgrading the fueling system, obtaining a permit for the construction of a new coach house and fixing a leak in a one million-gallon oil storage tank on the Site. R&R at 16. There was no discussion of the need to involve DEQE or other environmental regulators in these matters. Id. Contemporary documents likewise fail to reference the need for any environmental cleanup of the Site.[8] R&R at 52. Even in 1986, a report from the B&M's former employee and consultant detailing the "Oil Pollution Problems" at the Site made no mention of Chapter 21E. (Docket Entry #33, Exh. 3).

Moreover, at the time of discharge, all indications were that if any party would be required in the future to undertake responsibility for cleanup of the Site, it would be the B&M and not the MBTA. Prior to June 30, 1983, the DEP Northeast Regional Office logs identify the

---

[8] Though B&M contends that the 1976 Purchase and Sale Agreement for the Site and 1982 Operating Agreement between the parties expressly contemplated environmental cleanup liability, even a cursory review of the documents shows that this is not the case. The Purchase and Sale Agreement, which was executed in 1976, seven years prior to the enactment of Chapter 21E, indicates that each party shall bear its own costs for "Environmental Impact Studies," which were required for completion of major construction projects after the passage of the National Environmental Protection Act. (Dkt. #53, Attach. 4 at Exh. 10). Such studies assess a multitude of "environmental" impacts such as traffic, air pollution and noise, and have nothing to do with assessment or cleanup of contamination. The B&M's argument with respect to the 1982 Operating Agreement is an even bigger stretch. The agreement makes no reference to environmental liabilities or the conditions likely to give rise to them, and contains only a general reference to "property damage." (Dkt. #53, Attach. 4 at Exh. 12). The Magistrate Judge found that these documents do not evidence contemplation of an environmental reimbursement claim. R&R at 52.

B&M as the responsible party for the minor oil spills reported for the site, as had prior citations issued by the United States Coast Guard relating to oil discharges to the nearby Miller's River. R&R at 11-14. The MBTA is not mentioned as a responsible party on any of these documents, though the spills took place during the time when the MBTA owned the property. That the B&M would be expected to take responsibility for any response that would need to be taken is further corroborated by the 1982 Operating Agreement between the parties which expressly indicated that the B&M was "an independent contractor" with sole "managerial control" over the operations of the Terminal. R&R at 7.

As observed in the R&R, the factual circumstances of this case are notably similar to those presented by AM Int'l, where the Seventh Circuit concluded that the environmental response cost claims at issue had not been discharged. See R&R at 49. As in AM Int'l, where prior to the bankruptcy discharge there had been "…no soil testing, no [Environmental Protection Agency] involvement… and not even [the debtor] realized it faced CERCLA[9] liability," here, there was no soil testing for contamination until after the discharge date, no involvement of the DEQE or other environmental regulators, and not even the B&M realized the future Chapter 21E liability both of the parties faced. 106 F.3d 1342 at 1348; see also R&R at 49-50. These facts stand in sharp contrast to those present in cases where courts have concluded that a claimant's environmental contribution claims were in fact contemplated prior to a bankruptcy discharge. See, e.g., Reynolds Bros., 647 N.E.2d at 1208 (noting several forms of regulatory involvement prior to discharge before finding private claimant could have fairly contemplated its reimbursement claims); In re Chicago II 3 F.3d at 207 (where claimant knew of large scale EPA investigation of site at issue, contribution claims were fairly contemplated).

---

[9] CERCLA is the Comprehensive Environmental Response, Compensation, & Liability Act of 1980, 42 U.S.C. §9601, et. seq., and is the federal analog to Massachusetts' Chapter 21E cleanup statute.

And unlike the parties in NCL Corp. v. Lone Star Bldg. Ctrs. (Eastern) Inc., 144 B.R. 170 (S.D. Fla. 1992) (a case relied upon by the B&M in arguing that the MBTA's were in fact fairly contemplated), who had executed a lease specifically requiring the debtor to comply with applicable environmental regulations, the 1982 Operating Agreement contains no reference to environmental damage, pollution, or oil spills.  (Dkt. #53, Attach. 4 at Exh. 12).

In sum, claims for contribution for environmental response costs have not been discharged by bankruptcy under the fair contemplation standard unless, prior to the discharge, environmental regulators had been involved or the parties themselves had addressed the subject of environmental liabilities.  The Magistrate Judge correctly found that neither factor was present here.  Accordingly, the R&R properly concluded that the courts in the B&M's complaint alleging a discharge should be dismissed.

### III.     The B&M's Remaining Objections Are Also Groundless.

The B&M's objection to the R&R based upon the terms of the Consummation Order itself adds nothing to its statutory arguments.  The June 30, 1983 Consummation Order discharged "all obligations, debts, liabilities and claims" against the B&M as of that date and enjoined actions against the reorganized B&M "based upon any right, claim or interest of any kind or nature whatsoever."  See Consummation Order at Dkt. #33, Exh. 2, §5.03(a) and §8.01.  As these definitions make clear, and as numerous courts have held, the question whether a consummation order discharges a claim begins with an interpretation of the definition of "claim" under the application bankruptcy statute.  See, e.g., In re Chicago II 3 F.3d at 206; In re Conseco, Inc., 330 B.R. 673, 684-85 (Bankr. N.D.Ill. 2005).  Indeed, a plain reading of the Consummation Order's prohibition of future claims demonstrates that the Consummation Order's provisions are

no broader than Section 77's definition of claims as including "debts, whether liquidated or unliquidated, …or other interests of whatever character." 11 U.S.C. §205(b).

Thus, just as the fair contemplation standard is appropriate under an analysis of Section 77's definition of claims, fair contemplation is the appropriate test by which to judge claims under the B&M's Consummation Order. In fact, the one reported case to have considered the terms of the B&M's Consummation Order, Mesiti, adopted precisely that approach. 156 B.R. at 117 (finding that environmental response cost claims asserted against the B&M come generally within reach of the B&M's Consummation Order, but reserving question of whether such claims were discharged and noting that preferred method of resolving that question involved application of a judicial foreseeability or fair contemplation test). Under the fair contemplation standard, the R&R properly concluded that the MBTA's claims were not in fact contemplated by the parties at the time of discharge and therefore are not barred by the Consummation Order.[10]

Equally insignificant are the B&M's arguments that the MBTA possessed claims against B&M under the Massachusetts common law of nuisance prior to the discharge date. As a preliminary matter, the R&R did not, as B&M erroneously indicates, ignore this argument. On the contrary, the R&R expressly addressed it at note 11, and correctly dismissed it as beside the point. R&R at 22. Because the sole cause of action MBTA now asserts arises under Chapter 21E, the relevant inquiry is whether that statutory claim, not hypothetical pre-existing common

---

[10] In arguing that its Consummation Order contains a "sweeping" injunction of claims far broader than the reach of Section 77, B&M blatantly misrepresents the holding of Providence and Worcester R.R. Co. v. The Penn Central Corp., 1989 U.S. Dist. LEXIS 7259 (D.Mass. 1989). It did not, as B&M indicates, hold that "in [the] context of [a Section 77] reorganization, [CERCLA] and Chapter 21E claims arose before Consummation Date and were barred by sweeping injunction in [the] Consummation Order." Corrected Objections at 23. Rather, that decision was limited to the narrow finding that the United States District Court for the Eastern District of Pennsylvania (the "Reorganization Court") retained exclusive jurisdiction to enforce the terms of the Consummation Order at issue and that the CERCLA and Chapter 21E claims could not be litigated at all without first obtaining leave to file them from the Reorganization Court. See id. at *7 ("This Court cannot exercise jurisdiction until such permission is obtained").

law claims, were discharged by the June 30, 1983 Consummation Order. In fact, the B&M itself has argued that, because none of the MBTA's present claims arise under CERCLA, analysis of claims under that statute are, in the B&M's words, "irrelevant." (Dkt. #35 at FN 6).

Even so, there is no basis for concluding that the parties contemplated common law claims at the time of discharge because there is no evidence in the record to suggest that either party viewed the B&M's activities at the Site as a nuisance at any time prior to the discharge. There is nothing to suggest, for example, that the MBTA had complained about conditions at the Site or suggested that the B&M needed to improve its operations because it was damaging the MBTA's property. Oil spillage at the Site in and before 1983 seems to have been at concern, if at all, because of the loss of a valuable asset and not because of any effect on the use of the Site. Thus, there is no indicatation that the parties viewed conditions at the site as a nuisance at the time of B&M's discharge in 1983. The case cited by B&M is not to the contrary. See Nassr v. Commonwealth, 477 N.E.2d 987, 991 (Mass. 1985) (upholding lower court finding that the condition at issue constituted a nuisance "because of the serious possibility of an explosion" rather than because of contamination).

The B&M's final objection was not even raised in its various summary judgment papers and therefore is without any support in the factual record relating to the cross-motions. Specifically, the B&M contends that the MBTA could have petitioned the bankruptcy court for leave to file its claims against the B&M once it did finally learn of its potentially cleanup liability and the need to recover from the B&M. This argument completely undercuts the B&M's protestations that the MBTA's future liability to the DEP should have been contemplated in June 1983. Subject to that same failing is the B&M's additional contention, also made for the first time in its objections, that Guilford Transportation Industries might not have purchased the

B&M out of the bankruptcy had it known that the MBTA's contribution claims had not been discharged. <u>See</u> Corrected Objections at 12.  The issue is whether the MBTA's Chapter 21E claims were contemplated by the parties prior to June 30, 1983.  These belated arguments demonstrate, as Magistrate Judge Bowler correctly concluded, that those claims were not contemplated at that time and, accordingly, were not discharged.

## CONCLUSION

For the foregoing reasons, the Court should reject the B&M's Corrected Objections and adopt Magistrate Judge Bowler's January 26, 2007 Report and Recommendation in its entirety, thereby granting the MBTA's motion for partial summary judgment, denying the B&M's motion for partial summary judgment and dismissing Counts I, II and III of the B&M's complaint with prejudice.

Respectfully submitted,

/s/ John M. Stevens
John M. Stevens (BBO #480140)
Alicia Barton McDevitt (BBO #655184)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 832-1000
Attorneys for Defendant
  Massachusetts Bay Transportation Authority

Dated:  March 5, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above document, which was filed via the Court's ECF system, will be sent electronically by the ECF system to the registered

participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 5, 2007.

/s/ John M. Stevens
John M. Stevens (BBO #480140)
Alicia Barton McDevitt (BBO #655184)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 832-1000
Attorneys for Defendant
  Massachusetts Bay Transportation Authority

Dated:  March 5, 2007